Joseph Beeson and Thomas Beeson, administrators
of Thomas Beeson, deceased,

*vs.*

John Elliott, executor of Rebecca Beeson, deceased.

*New Castle, Feb. T.,* 1831.

A testator devised as follows ; " I give to my dear and loving wife, the
" reasonable use of two suitable rooms in the house that we may
" happen to dwell in at the time of my decease, whether in town or
" country, with suitable provisions in the cellar, kitchen, garden,
" necessary house, well or pump : To hold to my said wife for and
" during her natural life, with full and free ingress or egress and
" regress." After the death of the testator, his widow removed from
the house in which he was living at his decease, and to which the
rights and privileges devised to her had attached. The premises were
for some years occupied and rented by her two sons, the devisees
thereof in fee simple, but without any contract for compensation in
respect of the widow's privileges. *Held,* that under the devise the
widow took such an interest in the premises, that the law would imply
a contract to pay a compensation therefor in the absence of an express
contract; and that the allowance of such compensation by referees in
an arbitration between the widow and one of the devisees, submitting
all matters in controversy, was not a mistake in law.

The question of allowing interest upon arrears of an annuity is, in a court
of equity, discretionary, — depending upon equitable considerations
arising out of the circumstances of the particular case.

An annuity bequeathed to a widow in lieu of dower, for her maintenance,
and charged on real estate, payable quarterly, the prompt payment of
which was necessary to her comfortable support, — *held,* to be a proper
subject for the allowance of interest ; and that such allowance by
referees, in an arbitration submitting all matters in controversy, was
not a mistake in law. Courts of equity have a general jurisdiction to
relieve against mistakes in law, committed by arbitrators in the mak-
ing of awards ; but, in the exercise of such jurisdiction, the Courts will
relieve only against such mistakes as are *plain, palpable and gross.*

Long acquiescence in an award, without objection made in the court of
law to which such award was returned, the arbitration being one

entered into in a suit or amicable action at law,—*held*, a sufficient ground for a court of equity to refuse its interference, even supposing such a case to be within its jurisdiction.

In the case of an award made in a suit or amicable action at law, pursuant to the Statute of 18 Geo. II. (Digest Delaware Laws, 112), the remedy against irregularity or mistake in the award is in the court of law to which the award is returnable.

Awards under the Statute of this State, made pursuant to a rule of court, with judgment thereon, stand upon a different footing from awards under the English Statute of 9 and 10 William III ; and the English decisions under the latter Statute are not in force here.

A party is not, by his having joined in a case stated in a court of equity submitting the question of the validity of the award, precluded from objecting to the want of jurisdiction. The consent of parties cannot give jurisdiction, if otherwise it does not exist.

Where two courts have concurrent jurisdiction of a subject matter, the one which first possesses the cause acquires thereby the right to exercise the jurisdiction exclusively.

Under the Statute of this State of 1726-36,limiting the powers of the courts of equity, our Court of Chancery has no jurisdiction of a case in which there is a " sufficient remedy at law." What *is* a " sufficient remedy at law," in the sense of the Statute is not clearly settled.

CASE STATED IN THE NATURE OF A BILL FOR AN INJUNC-TION.—This was a case stated, entered under an agreement that it should stand as a substitute for a bill and answer. It set forth the following state of facts as agreed upon between the parties :

"Thomas Beeson, the elder, grandfather of complainant, being seised in fee simple of a certain farm or tract of land, situated in Brandywine Hundred, and also of a certain house and lot, situated in the Borough of Wilmington, on the 13th of February, 1787, made his last will and testament in writing, whereby he devised, among other things, certain portions of his real estate in Brandywine hundred, and also his house and lot in Wilmington, to two of his sons, viz ; Jonathan Beeson, and Thomas Beeson, the father of the complainants. He also devised to his wife, Rebecca Beeson, an annuity of £40 per annum, during her

47

natural life, payable quarterly, in bar of dower; and charged the said annuity upon the real and personal estate devised and bequeathed to his two sons, Jonathan and Thomas Beeson. He also devised to the widow, Rebecca Beeson, the reasonable use of two rooms in such house, whether in town or country, as they might be dwelling in at the time of his death, together with certain privileges, for and during her natural life. The testator died on the 22nd of March, 1790,—dwelling, at the time of his death, in the house in Wilmington. The annuity of £40, and the use of the two rooms in the house in Wilmington, as devised by the testator, were accepted by Rebecca Beeson in bar of her dower; and in the month of April, 1790, she removed from the house and resided with her two sons, then living together in the country;—with whom she continued to reside until the 4th of May, 1792, and then removed to the house of her son-in-law, John Elliott, the defendant. She resided with him until her death.

Upon the death of the testator, the house and lot in Wilmington came into the possession of Jonathan and Thomas Beeson, who held it without any agreement, arrangement or understanding, whatsoever, between them and the widow, Rebecca Beeson, until the 22nd March, 1799. At that date Jonathan and Thomas Beeson having contracted to sell the house and lot, each executed a judgment bond for $300.00, to the widow, to secure to her an annuity of $20.00, during her life, for her right in the house and lot.

In the beginning of the year 1814, the widow and Thomas Beeson having disagreed as to the sum due from him, for his proportion of the arrears of the said annuity of forty pounds, and also for the arrears of the annuity of twenty dollars secured by his bond,—an amicable action was entered in the Court of Common Pleas, referring all matters in controversy to three referees, by whom an award was made in favor of the widow, Rebecca Beeson, for the sum of $993.23; and the same being returned to the Court of

Common Pleas, was confirmed, without objection, and judgment entered thereon.

Rebecca Beeson and Thomas Beeson afterwards both died, and proceedings at law were taken by the executor of Rebecca Beeson, deceased, to collect from the administrators of Thomas Beeson, deceased, the judgment recovered in the amicable action, as also the arrears of the annuity accrued since the date of the amicable action. Thereupon, this case stated was agreed upon and submitted to the Chancellor, for such decree as, under all the circumstances, should be agreeable to equity.

The referees in the amicable action allowed to the widow interest on the annuity of £40.00, and also allowed $20 per annum as a compensation for her privileges in the house from 1793, to 1799, during which period she had relinquished them to the devisees. The present controversy arose out of these allowances.

*J. A. Bayard* and *Rogers*, for the complainants.

The complainants seek to have this award set aside or corrected in equity, on the ground of mistake on the part of the referees. Several questions are involved.

1. Was there such mistake?

It was a clear mistake in law, on the part of the referees, to allow interest on the arrears of the annuity. The modern doctrine is that an annuity does not carry interest, in the absence of an express contract to pay it. The doctrine proceeds upon the ground that an annuity is of the nature of interest, and the law does not allow interest upon interest. Interest upon an annuity is in the nature of compound interest. 3 *Bro. Ch. Rep.* 489, 494 : 2 *Ves. Jr.* 153 : 4 *Bro. Ch. Rep.* 320 : 1 *Sch. & Lef.* 301. There have been no decisions in this State to control the question, and it must therefore be governed by the English authorities.

Another mistake of the referees in point of law was the allowance of $20 per annum to the widow as rent or compensation for her right to the two rooms and the accompanying privileges, devised to her by the testator in the house where he should be living at his decease. Her interest in the rooms was a mere personal privilege,—a right of user,—such as she could not sell, and for which she was entitled to no compensation, in the absence of contract with Thomas Beeson.

2. Do these mistakes invalidate the award ? and has this Court jurisdiction to set it aside ? These are the next questions.

The rule as to the effect of mistake is, that for a mistake in law an award made under a general reference shall be set aside, though not where the reference is a special one, expressly submitting the question of law, or where the reference is made to a professional person. Such is the rule of the common law courts in the case of an arbitration submitted to in a suit pending. 3 *East,* 18 ; 13 *East,* 356. Courts of Equity exercise the like power over awards made in arbitrations at large, 1 *Ves. Jr.* 365 : 2 *Ves. Jr.* 15, 451 : 6 *Ves. Jr.* 282 : 9 *Ves. Jr.* 364 : 14 *Ves. Jr.* 265, 269.

But it will be argued that our remedy was in the Court of Common Pleas, the award being by the Statute made subject to the approval of that Court. *Del. Digest* 112. True, we might have applied to that Court, but the remedies are concurrent. The statutory remedy in the common law court does not oust the general jurisdiction of equity over awards. In the absence of negative words in a statute creating a new jurisdiction, the intention to oust an existing jurisdiction is not to be presumed. In cases of awards under the English Statute of 9 & 10 Will. III, the courts of equity continued to exercise jurisdiction, as previously they had done, over awards made at common

law.  2 *Ves. Jr.* 451 : 14 *Ves. Jr.* 265. . There are import-
ant reasons for reserving the concurrent jurisdiction in
equity.  The remedy in a court of equity is more effect-
ual than at law.  It can afford discovery.  An appeal lies
from its decree; whereas the confirmation of the award,
at law, is final and conclusive.  There are no negative
words in this Statute; and, for important reasons enforc-
ing the general principle, the jurisdiction must be taken
to continue.  The delay of the complainants · to seek
relief in equity ought not to prejudice their just rights.
For it is not a case of inexcusable laches, through which
the widow can be supposed to have suffered any injury.
It was a case between a mother and her sons, and the de-
lay was to avoid family disputes.


*Booth* and *Hamilton,* for the defendants.


1. The referees committed no mistake affecting the va-
lidity of this award.  With respect to interest on the
annuity,—the allowance of interest is, in equity, discre-
tionary, depending upon the circumstances of the case ;
and although, in some cases, such interest on annuities has
been denied, yet not so, where the annuity is given for
maintenance, and especially if it be charged on real estate.
2 *Atk.* 211 : 3 *Atk.* 579 : 1 *P. Wms.* 541 :  2 *P. Wms.* 163.
This is a case of that description.  The annuity is given
to a widow in lieu of dower, for her maintenance ; and it
is charged upon the testator's real, as well as his personal
estate.  It affords, at most, a bare support for the widow ;
and the delay of payment could not but be presumed to
be detrimental to her.  No laches, in not receiving it, can
be imputed to her.  The case is one of strong equitable
circumstances in favor of the interest; such as courts of
equity have never failed to regard.  In *Mary Batson vs.
Smith,* in our Court of Chancery in 1819, interest was
allowed on an annuity bequeathed to a widow.  Next, as

to the allowance made for the widow's privileges in the house. It appears that the devisees, the testator's sons, rented the house and received the rents therefor. These rents were in part an equivalent for her interest in certain parts of the house. In equity, at least, the widow should be entitled to a just compensation for a right, the full benefit of which the devisees have received. At all events, a court of equity will not interfere to set aside an allowance, already made, of a compensation which rests upon so strong an equity as in this case.

2. This Court has no jurisdiction over the award. The general principle that equity will not interfere, where there is a complete remedy at law, is of itself a bar to relief. For the complainant could have had ample redress in the Court of Common Pleas, upon the return of the award. It was subject to the approval of that Court, which is invested with as large an equitable power over awards, made in suits there pending, as this Court will exercise over awards generally. But, further, the Statute, under which this award was made, expressly declares it to be final and conclusive, if approved by the Court to which it is returned, and directs that judgment shall be entered thereon, *Del. Digest*, 112. The Statute makes it as available as a verdict. It is well settled that this Court cannot interfere against a verdict at law to correct mistakes, though it may do so in order to relieve against fraud. Then, as by the Statute awards are put upon the same footing as verdicts, it follows that courts of equity can relieve against them to the like extent only. The provision of our Statute making awards in suits pending available as a verdict and conclusive, if approved by the Court to which they are returned, places them upon a different footing from awards under the English Statute of 9 and 10 William III.

3. But even if this Court has jurisdiction over awards made under the Statute, the present is not a proper case for its interference. The ground alleged by the bill is not

sufficient. To impeach an award, whether at law or in equity, there must appear to have been fraud, misbehavior of the referees, or palpable and gross mistake,—such as this case does not show. Neither the courts of law nor of equity will interfere to re-examine, upon the merits, a case which has been investigated by referees, nor to correct mistakes of fact. 1 *Ves. Jr.* 365 : 2 *Ves. Jr.* 15. *In* 2 *Barn. & Ald.* 691, the Court refused to set aside an award impeached on the ground that the arbitrators had allowed interest, contrary to the general practice of the courts, holding such allowance to be within the discretion of arbitrators.

A further objection to equitable interference in this case, even conceding the jurisdiction, arises out of the acquiescence or laches of the complainants. The award was made in 1814, and then approved by the Court of Common Pleas, without objection. The complainants proceeded to make payments under the judgment, from time to time, up to 1820. And not until after the widow's executor sought to collect the balance due upon the judgment, as late as 1828, when this bill was filed, after a delay of fourteen years, did the complainants attempt to impeach the judgment. In this view the equity of the case is strongly against them.

JOHNS, SR., CHANCELLOR.—The questions which the argument and the nature of the case present are,

1.—Did the arbitrators commit any mistakes, which invalidate the award?

2.—Supposing this Court has jurisdiction, is this a case in which the power of the Court ought to be exercised to set aside the award and stay the proceedings at law?

3.—Has this Court jurisdiction?

1. The first question is, did the arbitrators commit any mistake?

It is contended that two mistakes in law have been committed, and that against these the Court should grant relief.

With respect to one of these, it is said that the right or interest in two rooms in a house, together with certain privileges, which by the will of Thomas Beeson, the elder, were devised to Rebecca Beeson for life, passed only *a right to use and occupy the rooms herself*, which right was not transferable, and that she could not sell or rent it to another ; that as she removed from the house in May, 1792, and Thomas Beeson, Jr., and his brother possessed it until March, 1799, without any agreement, arrangement or understanding whatever between them and Rebecca Beeson, she was not entitled to any compensation for the use or occupation thereof ; and that the arbitrators, in charging the executors of Thomas Beeson, Jr., with a moiety of £40 per annum for the use of her part of the house during the term of seven years, were mistaken as to the law ; and that, in this respect, the award is invalid.

This was a reference of "*all matters in variance between the parties*." Whether Thomas Beeson, Jr., objected to paying any sum for the occupation of Rebecca Beeson's part of the house during the seven years, or to the amount to be paid, and whether this was a question decided by the arbitrators, does not appear. If the right to have any compensation for the use of the two rooms was not a matter in controversy, then the arbitrators would not, and the presumption is they did not, decide the question of law ; nor does it appear that there was any controversy as to the amount. But, if the arbitrators did decide that Rebecca had a right to some compensation for permitting her sons to have the use of her part of the house for seven years, without any express contract, they did not mistake the law ; for the law would imply a contract, if they occupied and used the house with her permission.

I am of opinion, that a larger interest in the house passed by the will than the complainants' counsel allow. The extent of that interest it is not material for me to decide. With respect, then, to the charge for rent of a part of the house and the privileges, no mistake appears to have been committed by the arbitrators.

The other alleged mistake in law is, that the arbitrators allowed Rebecca Beeson interest on the moiety of the annuity of £40, payable by Thomas Beeson, Jr., up to March 25th, 1814, to which by law she was not entitled.

It does not appear whether this was a matter in controversy submitted to the arbitrators. It may be the controversy included only the balance due on the account, the amount of payments and the sum to be allowed for the occupation of the rooms in the house. If so, then there was no mistake.

Again, what evidence was before the arbitrators as to interest does not appear. Suppose there had been an agreement, in consideration of forbearance, to pay interest, then it would be no mistake to allow it.

But further, conceding that the question of interest *was* a matter in controversy, and was decided by the arbitrators, and that there was no agreement for it, still was such decision against law ?

This is a question not settled by Delaware decisions. The English authorities are not easy to be reconciled. It seems to be laid down in them, as a general rule, that the arrears of an annuity do not carry interest, unless there be a contract for the payment of it. The modern cases establish this principle, as a general rule. 2 *Ves. Jr.* 163 : 4 *Bro. Ch. Rep.* 320 : 3 *Bro. Ch. Rep.* 489, 492. But the cases cited show exceptions to the general rule, and that in particular instances the allowance of interest is discretionary. 2 *Atk.* 211 : 1 *P. Wms.* 541. As, where the annuity is charged on real estate, and is for maintenance. 3 *Atk.*

579 : 1 *P. Wms.* 541. So, where arrears have accumulated,—on the principle of wrongfully witholding the money interest has been allowed.   2 *P. Wms.* 163.

It is my opinion that the allowance of interest is discretionary ; and that every case of an annuity, in which the question of interest arises, must be decided by its own circumstances, according to equity.

In this case the will shows that Thomas Beeson, the elder, was the owner of a considerable estate ; that he left several children, to whom much of his estate was devised, besides the land devised to his sons, Jonathan and Thomas; that he charged those lands with the payment of £40 per year to his widow, payable quarterly, in lieu of dower ; and that the testator made no other provision for the maintenance of his widow, except the use of two rooms in a house, together with certain privileges, and her choice of part of the personal estate, to the value of £50. This then is the case of an annuity for maintenance, charged on land, the profits of which the person bound to pay takes; and the quarterly payment of the annuity is necessary for the support of the annuitant. The non-payment quarterly is a wrongful withholding of the only means of her support; and the enjoyment of the profits of the land creates an obligation, both at law and in equity, for the allowance of interest.

I am, therefore, of opinion that if the arbitrators in this case did decide the question of interest and allow it, they did not commit a mistake nor decide against law.

Here I might stop and make the decree. But the importance of the other two questions raised in the case induces me to proceed, and to express my opinion upon them. Besides, some of the counsel may not be convinced of the correctness of my opinion on the question as to mistake, who would be satisfied that on other principles the suit ought to be dismissed.

2. The next question is whether, assuming that the Court has jurisdiction, this is a proper case in which to set aside the award and stay proceedings at law ?

The argument of the complainant's counsel assumes the broad ground that mistakes are sufficient to invalidate awards, with some special qualification. They cite 1 *Madd. Ch. Pr.* 78–9 : 1 *Ves. Jr.* 364 : 2 *Ves. Jr.* 450 : 14 *Ves. Jr.* 264. They take a distinction between a general and a special reference, contending that in the former the Court will correct errors in law, though not in the latter. 3 *East,* 18 : 13 *East,* 356 : 6 *Ves. Jr.* 282 : 9 *Ves. Jr.* 364. They also take a like distinction between references to non-professional and to professional men.

The defendant's counsel deny the broad ground assumed for the correction of awards generally, in equity. While they admit that °courts of equity do exercise the power of correcting mistakes in law committed by arbitrators, they insist that its interference must be only for a *plain, palpable* or *gross* mistake, as is the rule at common law; that in this respect, equity follows the law; and that at law the merits of an award cannot be inquired into, but it can be impeached only for fraud, misbehavior, corruption, or for such mistakes in law as are called *plain, palpable.* or *gross* mistakes. To show that equity will not, in England, exercise its power, in all cases, to set aside an award made against law or fact, there was cited 6 *Ves Jr.* 281 : also, 1 *Ves. Jr.* 365.

The defendant's counsel further insisted upon several special grounds of objection against a decree for relief in this case. These are,

1. That, with respect to the allowance of interest on the annuity, it has been held that, on a question of interest, the courts do not interfere with the discretion of arbitrators. 2 *Barn. & Ald.* 691 : 1 *Taunt* 151.

2. That our Statute makes awards under references in

court available as verdicts ; and that a verdict can be set aside only in the court where it is found. That in this State verdicts and awards stand on the same footing,though it is otherwise in England. *Dig. Del. Laws,* 112.

3. That the acquiescence of Thomas Beeson,Jr., by omitting to object at law to the award, was of the like effect as is neglect to move for a new trial after a verdict, in which case equity will not relieve. 1 *Sch. & Lef.* 201.

4. That equity will not interfere where, as here, there was a complete remedy at law. 1 *Sch. & Lef.* 201 : 1 *Madd. Ch. Pr.* 111 : 9 *Ves. Jr.* 67.

5. That objections to an award must be made in the. court to which the award is returned. 1 *Bac. Abr.* 239. 1 *Mad. Ch. Pr.* 79.

Besides the cases cited by counsel many other English authorities have been examined by the Court. It is certain that the law of awards, in England, has undergone much change since the 4th of July, 1776. Many of the modern cases are contradictory, and introduce new principles. They cannot, however, be held applicable to the two species of awards created by our laws, and which were unknown in English jurisprudence. Our system of rules for regulating awards differs from the English, particularly in reference to awards made under the act of 18 Geo. II, (Dig. Del. Laws, 112,) and the other species of awards returned into court in amicable actions. The latter originated, either in a liberal construction of the statute of 18 · Geo. II. or in usage, which may be considered as part of the common law of Delaware. I do not know that the statute of William III, creating a new species of awards in England, was extended here by practice. My impression is that the statute of 18 Geo. II, was designed as a substitute, so modified as to suit the convenience of our people.

It seems to me sufficient, in deciding upon this as the

case of an award and judgment in an amicable action entered in one of our courts of common law, to refer to our own Statute relative to this species of awards, and to the construction which has been given to it by the decisions of our courts.  This I have endeavored to do, having collected together from memory, and from notes of cases taken by myself for a long series of years, the decisions of our courts in controversies respecting the validity of awards.*  The rule established by them, as to the correction of mistakes of law by arbitrators is, that for a *plain, palpable* and *gross* mistake there is a remedy, at law or in equity, according to the circumstances of the case and the nature .of the reference.  But what *is* a *plain, palpable* and *gross* mistake is not clearly defined.  However, in applying the

---

* The Chancellor here cited from his notes the following as the course of decisions in Delaware, touching the powers of the Courts over awards.

CHANDLER *vs.* SPRINGER's EXR's :—*Common Pleas, Feb. T.* 1785.

Bayard, for plaintiff ; *Bedford*, for defendant.

Action on the case.  Reference, and award for £221, 14s.  Objected to.

The Court decided that the merits of an award could be inquired into ; and it did inquire generally into the merits of this award.  The grounds taken were the words in the Act of 18 Geo. II, "approved by the Court," which were considered to import that the Court must inquire, in order to approve or disapprove ;—also the words, "to be available as the verdict of a jury," which must be understood to import *not more* available than a verdict ; and, therefore, that an award might be set aside on the same grounds as a verdict.

MIERS' EX'RS., *vs.* SPEER's EX'RS :—*Common Pleas,* 1788.

Action of debt.  Reference, and an award.

The rule was admitted by counsel as to an inquiry into the merits ; and the Court did inquire, and examined an arbitrator as a witness.

PRICE *vs.* JEFFERIS :—*Common Pleas,* 1790.

Amicable action.

The rule was insisted on that awards could only be set aside on the grounds of misbehavior or corruption.  The Court considered this to be an award within the Act of 18 Geo. II, and set it aside because one of the arbitrators was not sworn.

MCKINLEY *vs.* REYNOLDS :—*Supreme Court,* 1791 ; *Killen, C. J.*

Bayard and *Read,* for plaintiff ; *Bedford* and *Levy,* for defendant.

Opinion :—here, no plain mistake—effect of acquiescence.

rule to the present case, there can be no difficulty. The mistakes here insisted upon are not plain, but are doubtful; and the principal one relied on relates to a question of interest, which, it is considered, rests much in discretion. Besides, here is long acquiescence,—four years from the time of the award to the death of Rebecca Beeson,—four years more to the death of Thomas Beeson, Jr.,—and three more before this suit was instituted between the representatives of the original parties,—an acquiescence, in all, of eleven years, with no attempt ever made to object at law to the award. In such a case, it is my opinion that a court of chancery ought not to interfere, even if it has jurisdiction.

3. The third question is, whether the Court has juris-

---

Reference in a suit pending.

The referees were examined, and the merits of the award inquired into generally. The principle decided in *Chandler vs. Springer's Ex'rs.* was admitted, and the award was impeached on the ground of its being against fact and law.

GILPIN *vs.* GILPIN :—*Supreme Court*, 1793 ; *Read, C. J.*

An amicable action held to be a reference under the Act of Assembly.

LEWDEN *vs.* SAWYER :—*Court of Errors and Appeals, Equity side*, 1799.

*Van Dyke*, for appellant ; *Read*, for respondent.

Award in an amicable action entered in the Common Pleas.

The Court of Appeals inquired into the merits, and for mistakes as to law corrected the award and ordered a perpetual injunction. (*Johns, C. J.*, having been counsel for the appellants, did not sit.)

COPES AND WIFE *vs.* WILSON AND WIFE :—*Supreme Court*, 1802.

*Van Dyke*, for plaintiff ; *Bayard*, for defendant.

Action of waste, and reference entered.

It was admitted by counsel that this was a species of reference at common law, and it was so considered by the Court.

CRAIN *vs.* LOWBER :—*Supreme Court*, 1804 ; *Read, C. J.*

*Bayard* and *Hall*, for plaintiff ; *Van Dyke* and *Ridgely*, for defendant.

The Court refused to permit an arbitrator to be a witness to support or impeach the award, or to suffer his declaration to be proved.

diction.   One of the counsel for the defendant considered that the defendant, having joined in a case stated and submitted the controversy to this Court, had admitted the jurisdiction and was thereby precluded from objecting to it.   The Court is of a different opinion.   It has been said to be.the duty of a good judge to amplify his jurisdiction; but the Chancellor is of opinion that it is for the good of the people that the Court of Chancery should be confined within its legitimate limits.  If the jurisdiction do not exist, consent cannot give it.   In such case the proceedings are void and a nullity, as was decided in *Bishop vs. Bishop*, in 1795, by the Supreme Court, (*Read, C. J.*) respecting a a case in the Orphans' Court.

The complainants' counsel, in support of the jurisdic-

The Court also decided that it would not inquire generally into the merits.   Other witnesses were examined, and the award was attempted to be impeached for mistakes of fact and law.   The Court held that no mistakes were proved and confirmed the award.

ARMSTRONG AND .WIFE, *vs.* WINDSOR'S EXR'S. :—*Supreme Court*, 1811.

A majority of the Court inquired into the merits, and set aside an award for a mistake in not allowing a discount.   *Johns, C. J.*, dissenting.

PHILLIPS *vs.* REES :—*Court of Errors and Appeals ;* 1811.

Appeal from a decree of the Court of Chancery dismissing a bill to set aside, on the ground of mistake, an award which had been made in an amicable action.

The decree was affirmed, because the Court of Appeals was of opinion that no mistake had been committed.   It was considered un necessary to decide the question as to the power of the Court to afford relief.

In the argument it was admitted that for a *gross* mistake a court of equity would set aside an award; and the power to inquire as to mistakes under some limitations, seemed not to be questioned.

PRATT AND KINTZY *vs.* BRADUN AND REES :—*Court of Errors and Appeals,* 1811.

*Bayard* and *Rogers,* for appellants; *Van Dyke* and *Read,* for respondents.

This case came before the Court upon an appeal from an interlo-cutory order of the Chancellor for an account.   There had been an

tion, argued that a party must have the right to elect whether to object to the award at law or in equity, in order to preserve his right of review by an appeal to the High Court of Errors and Appeals. This argument assumes that a writ of error would not lie to the judgment at law on the award. That is a question not decided, arising under the Acts of 13 Geo. II, and the Act of 1811 (*Dig. Del. Laws*, 112), and under the Act of 1829 respecting bills of exception. It will depend on the meaning and import of the word "trial" in the latter Act. But suppose it true, that there can be no review of the judgment at law. This may be a defect in our constitution or laws, but it does not prove that the Court of Chancery has jurisdiction in such a case.†

---

† The Chancellor, in the margin of his manuscript opinion, has a note that a writ of error will lie to a judgment at law on an award, and cites Gilpin vs. Gilpin decided in 1793. But from his memorandum of that case, among others collected on the general subject of the powers of the courts over awards, it appears to have been in the Supreme Court. Perhaps he intended, in the marginal note, to refer to *Lewden vs. Sawyer*, in 1799, which was in the Court of Appeals, on error to the court of Common Pleas, and was the case of an award. See *ante*, p. 382. *Note.*

---

award in an amicable action and judgment thereon, which was relied on as a bar to the right to an account.

The Court considered that the award was not conclusive. The objection to it was misbehavior.

The Court also expressed an opinion that the arbitrators had committed a gross mistake; but observed that the Court was not to be understood as deciding the general principle, that, in every case of awards; a mistake of law will make it obligatory on a court of equity to interfere and set aside the award. The Court considered the exercise of this power to be discretionary. The question of jurisdiction was not considered. The interlocutory decree was affirmed.

CRAIN's ADM'R. AND DOUGLASS *vs.* LOWBER's ADM'R. :—*Court of Errors and Appeals*, 1813.

*Rodney*, for appellant; *Hall*, for respondent.

This was an appeal from a decree of the Court of Chancery setting aside an award which had been returned in an action referred in the Supreme Court. Exceptions to the award had been heard in the Supreme Court, the award confirmed and judgment entered upon it.

I am of opinion that this Court is without jurisdiction of the case before it, upon two grounds :

· 1st. On the principle decided by the Court of Appeals in the case of *Crain's adm'r., and Douglass vs. Lowber's adm'r.,* decided in the Court of Appeals in 1813, that where two courts have concurrent jurisdiction, the one which first possesses the cause has the exclusive right of exercising jurisdiction. This is the latest decision, and I believe the only one where the point was expressly adjudged on argument ; and it being a decision of the highest tribunal is considered by this Court a binding authority.‡ I have understood that the late Chancellor, after this decision, dismissed some bills filed for setting aside awards, and required, before he would entertain such bills, some special

‡ See this case, *ante,* p. 384. *Note.*

    *Rodney* relied on the want of jurisdiction in the Court of Chancery, insisting on the principle that where two courts have concurrent jurisdiction, the Court first possessing the cause ousts or excludes the other. *Hall* answered, that the Court of Chancery had exercised the power.

    The Court unanimously reversed the Chancellor's decree. *Johns, C. J.,* and *Hall, Cooper* and *Warner, Justices,* were of opinion that the Chancellor had no jurisdiction. *Booth, C. J.,* did not express an opinion on this point, but concurred in the reversal.

SPEAR *vs.* JARRELL : — *Court of Errors and Appeals,* 1814.

    This was an appeal from a decree of the Chancellor staying proceedings on a judgment at law entered upon a bill obligatory which had been given for the payment of a sum of money, according to such award as might be made under a parol submission. The decree in effect set aside the award. It was reversed on the appeal, because the Court considered the award conclusive, inasmuch as it had not been impeached on any of the usual grounds of misbehavior, corruption or of plain and gross mistake.

SAUNDERS' EXR'S. *vs.* HAUGHEY : --*Supreme Court,* 1815.

    An amicable action, referred to counsel and report returned. The Court set aside the award for a mistake of law. The point seems to have been submitted by consent of counsel.

CLAYTON *vs.* WILLIAMS :—*Supreme Court,* 1815.

    There was a general judgment against an administrator on a

ground, such as accident, or other reason for the omission of the party to avail himself of his remedy at law.

2d. The other ground is that Thomas Beeson, Jr., had a sufficient remedy at law. By the 20th Sec. of an Act of Assembly, passed between 1726 and 1736, limiting the powers of the courts of equity within this State, the jurisdiction of the present case, (there being a sufficient remedy at law) is ousted. What is the meaning of the word "sufficient" in the above Act is a question which has occasioned some uncertainty as to the dividing line between the common law and equity jurisdictions. In *Polk vs. The Farmers'* and *Mechanics' Bank*, in the Court of Appeals, June T., 1822, this point was made and much argued. There was no direct decision by the Court, but its opinion

report, and this was an action of debt on the judgment. Parol testimony was offered to prove a want of assets, and was rejected by a majority of the Court. *Johns, C. J.*, contra.

HUDSON, ET AL., *vs.* MCDONOUGH (A GUARDIAN), ET AL. :—*Supreme Court*, 1816.

*McLean* and *Read*, for plaintiff; *Van Dyke* for defendants.

An amicable action to settle the lines of certain land, and report returned.

The award was objected to. 1st, for a mistake. 2nd, that a guardian could not bind his ward by such an action. An arbitrator (not objected to) was offered as a witness.

The Chief Justice asked if the Court were to re-try the merits. The plaintiffs' counsel answered in the negative. The defendants' counsel said, the evidence was offered only to prove *the nature of the case*. *Read* objected to a general inquiry. This was an inquiry into the merits. The Court directed the counsel first to discuss the question, whether the minor would be bound by this reference on the part of his guardian. This question being argued, the Court decided it in the negative and set aside the award.

WILTBANK'S EXR'S *vs.* T. & P. MAULL :—*Supreme Court*, 1826.

*Robinson*, for plaintiffs; *Wells*, for defendants.

Reference in an action pending, and award returned.

By consent, witnesses were examined as to the merits. *Wells* contended that the referees had not sufficient evidence, and that awards were only as available as verdicts. *Robinson* replied that a verdict

was that the Court of Chancery must be kept within the limits of its jurisdiction.

The present is a plain case, in which there can be no doubt as to the sufficiency of the remedy at law.

With such views of the questions arising in the case, the bill must be dismissed.

This decree was, on appeal, affirmed by the High Court of Errors and Appeals, at the June Term, 1831.    See 1 *Harrington's Rep.* 394. *n.*

would not be set aside on such ground.    The Court held that no plain mistake was proved and that the decision of the referees ought to bind the parties.    Award confirmed.

SILVERS AND WIFE *vs.* FORD'S ADMR'S :—*Supreme Court*, 1827.

*Johns*, for plaintiffs ; *Read*, for defendants.

In an amicable action, on report returned, the Court decided that the principles on which the award was made could not be inquired into ; for this would be to re-try the merits.

SPRUANCE *vs.* POOVY :—*Supreme Court*, 1829.

*Booth*, for plaintiff; *Black*, for defendant.

Reference in an action pending, and award returned.

*Booth* offered a referee as a witness, and proposed to inquire into the merits.    *Black* objected to the competency of the witness.    *Booth* insisted that the witness was competent for some purposes.    The Court decided that a referee was not a competent witness for the purpose of inquiring into the merits of the award or to impeach it for misbehavior or corruption.    Award confirmed.