MARY VAN VRANKIN *v.* SARAH E. ROBERTS, CHARLES ROBERTS, THE PENNSYLVANIA COMPANY FOR INSURANCE ON LIVES AND GRANTING ANNUITIES, and THE SECURITY TRUST AND SAFE DEPOSIT COMPANY.

New Castle, March Term, 1893

Mortgages — foreclosure of; In equity and at law — the institution of the former, a constructive abandonment of the latter; Remedies — when election must be made in exercise of, and when may be used concurrently.

1. The concurrent use of two or more remedies adapted to the enforcement of a mortgage debt, each of which would produce precisely the same result, falls without the rule permitting a mortgagee to exercise all his remedies concurrently.

2. In Delaware a mortgagee has a right to proceed on his mortgage in equity and at law. In equity by foreclosure, at law by *scire facias*. He also has the right to proceed on his bond or other legal security for the debt. There is no doubt that he may pursue the last-named remedy, and either of the others, at the same time, so that he does not take double satisfaction.

3. A mortgagee proceeding by *scire facias* in the Superior Court, and afterward by a bill in equity, in which latter proceeding the property was sold, cannot recover costs incurred in the former proceeding.

4. A mortgagee cannot use concurrently his remedy by *scire facias* and by bill in equity, and the beginning of the latter is a constructive abandonment of the former previously begun.

PETITION to draw money out of court.

Petition of the Security Trust and Safe Deposit Company of Wilmington, to draw certain moneys out of

court, deposited in the registry thereof, pursuant to a decree of the court confirming the sale of certain lands upon which it held a second mortgage and which were sold under a previous decree, foreclosing a first mortgage thereon, held by the Pennsylvania Company for Insurance of Lives and Granting Annuities, as assignee.

Petition also of Mary Van Vrankin, to withdraw a portion of said fund, to pay certain costs incurred in obtaining judgment in her behalf, by *scire facias* proceedings on said first mortgage for arrears of interest on the unpaid balance of the principal and the costs attending the execution process that followed.

Alex. B. Cooper, for complainant.

The fund in court is a part of the proceeds of sale of the lands of Sarah E. Roberts, which were sold by order of this court, " free and discharged from all liens and incumbrances," and particularly from the lien of a certain mortgage, given by Wm. Millward (a former owner) to Nathan T. Boulden, conditioned to pay the interest of $200 to Mrs. Van Vrankin during her life, which was in lieu of her dower in said premises, as the widow of Nathan Boulden.

Mrs. Van Vrankin prior to filing her bill in Chancery, had issued a *scire facias* on the mortgage for interest, and had recovered judgment thereon.

The only question here is, should the costs on that judgment, as an existing lien, be first paid out of this fund?

The validity of that judgment cannot be questioned in this court. It was rendered by a court of compe-

2

tent jurisdiction and is conclusive until set aside by it. It cannot be collaterally attacked.    8 Am. & Eng. Ency. of Law, 245.

The principal of the judgment has been paid, but the costs have not; they are just as much a part of the judgment as the principal, and on a sale are always first paid.    Freeman on Judgments, § 338.

The fund in court stands in the place of the land, and is subject to its burdens.    Freeman on Judgments, § 400; Freeman on Executions, § 447.

This judgment is upon the very mortgage to which this fund in court is principally applicable, and must be paid; there is no discretion about it.

We did not abandon our rights to proceed at law. We came into Chancery because the remedy was more complete to secure our future interests.

We had a right to proceed at law for installments due.    And the lien of those not due attaches to the proceeds of sale.    Rev. Code, 687, § 55; 2 Hilliard on Mortgages, 74, 50, 52, 250, 251 and 252; 2 Tidd's Pr. 1102, 1107; 34 Penn. St. 223; 9 Mass. 258; 1 Douglas (Mich.), 217; 11 Penn. St. 282.

Judgment on a *scire facias* is only an award of execution.    Rev. Code, 687, §§ 55, 57; Freeman on Executions, § 81; 16 N. J. Law, 94; 2 Hilliard on Mortgages; 1 Md. Ch. 87.

Proceedings may be had both at law and in equity. The remedy is concurrent, and we are entitled to our costs in both.    2 Hilliard on Mortgages, 103, 107, 111; 24 Mo. 265; 1 Md. Ch. 87; 2 id. 322.

Benjamin Nields, for respondents.

WOLCOTT, CHANCELLOR.— These adverse applications grew out of the double proceedings on the first mortgage for the sale of the lands described therein, instituted by Mary Van Vrankin, by bill to foreclose in Chancery and by *scire facias* in the Superior Court in and for New Castle County. The material facts are set forth in the bill and are substantially as follows:

Nathan Boulden, late of Pencader Hundred, New Castle County, and the State of Delaware, in and by his last will and testament devised to his son, Nathan T. Boulden, a certain farm situated in said hundred, in fee-tail, subject to the right of dower in his wife, Mary Boulden; the value of which in money to be paid to her by his said son annually. For the purpose of carrying into effect the provisions of the said will in respect to said dower, the said Nathan T. Boulden and Mary Boulden, by mutual agreement, did appoint J. R. Price, John McCracken and C. B. Ellison to ascertain the annual value thereof in money; who did by a written report, dated April 9, 1851, estimate it to be $200. The said Nathan T. Boulden thereafter paid said amount to the said widow as the same came due, to-wit, on the 25th day of April in each and every year as long as he continued to hold said farm. On the 10th day of January, A. D. 1868, he conveyed said farm to one William Millward, now deceased, subject to said annual charge of $200; and to secure a part of the purchase money therefor, the said Millward and wife executed and delivered to the said Boulden a bond and mortgage for $12,000, with interest, payable on or before the 25th day of March, 1880. In the condition of

said mortgage it is provided among other things, "that out of the accruing interest, the sum of $200 annually be paid at the time aforesaid by the said Millward to Mary Boulden, who had then become Mary Van Vrankin, in lieu of her dower, with a provision that if she shall be living at the time when the principal sum shall fall due, the said Millward, his heirs and assigns, shall retain during the life of the said widow, so much of the principal sum as shall secure the said annual sum during her life." Said bond and mortgage were afterward assigned to the Pennsylvania Company for Insurance of Lives and Granting Annuities, which is now the legal holder of the same. The money due thereon at the time of the sale under the decree for foreclosure was $3,333.33 1-3, together with the annuities or arrears of interest due the said widow, amounting to the sum of $550, with the interest on each annuity from the date upon which it was payable.

On or about the 20th day of September, 1876, the said lands and premises were conveyed by the executor and widow of the said William Millward, then deceased, according to the provisions of his will, to one James W. Dodson. The said James W. Dodson and wife, on the 9th day of December, 1878, conveyed the same to Addie B. Cochran, and Addie B. Cochran and E. R. Cochran, her husband, on the 28th day of February, 1885, conveyed the same to Sarah E. Roberts, of the City of Chester, in the State of Pennsylvania, who was the owner of the land at the time of the decree for foreclosure, and the sale thereunder.

On the same day, the said Sarah E. Roberts and her

husband executed and delivered a bond and mortgage to the said Addie B. Cochran, covering the said lands and premises, for $11,000, a part of the purchase money therefor payable at the expiration of five years from the date thereof, which said bond and mortgage were afterward duly assigned to the said The Security Trust and Safe Deposit Company. By the records of the Superior Court, it appears that the said Pennsylvania Company for Insurance of Lives, etc., in behalf of the said Mary Van Vrankin, sued out a *scire facias* in the Superior Court aforesaid, on the first-named mortgage, against the executors of William Millward alone, and obtained judgment thereon for the respective annuities in arrear, with interest thereon from the dates of their maturity respectively, upon which a *levari facias* was issued, and sale of the mortgage premises made, and at the term of said court, to which said writ was returnable, said sale was set aside. Afterward foreclosure proceedings on said mortgage were instituted in this court, which resulted in the sale of the mortgaged premises, a part of the proceeds of which is the fund now in controversy.

The question presented by the facts in this case is: Whether the costs incident to the judgment obtained on the first mortgage and the *levari facias* issued thereon constitute a part of the mortgage debt which must be paid out of the fund produced by the sale of the mortgaged premises before any part thereof can be applied to the second mortgage?

If the judgment was a nullity because the rights of the equitable plaintiff under the peculiar condition of

the mortgage were such as a court of law was not competent to adjudge or determine, or on account of the omission to make the owner of the equity of redemption one of the party defendants, there could be no ground of dispute as to the exoneration of the fund in question from liability to pay the costs taxed on the judgment and the execution that followed. If the judgment is invalid for either of the causes above named, the costs would fall on the party making the mistake, and not on the mortgagor or his alienees, upon the principle that every one should suffer the consequences of his own folly. Whether the judgment was a nullity or not, it is not necessary now to decide as the question before the court may be disposed of on other grounds.

Assuming that the petitioner, Mary Van Vrankin, had a complete right to sue in a legal forum, in the name of the assignee as she did, for the purpose of asserting her rights stipulated for in the mortgage, and assuming that it was not necessary to make the terre-tenant of the mortgaged premises one of the party defendants according to the contention of her solicitor, yet can the fund under the facts in the case be subjected to the payment of the costs in question to the detriment of the second mortgage creditor?

In my opinion it cannot.

While reason and authority too, when confined within the limits determined by the facts in each case, concur in sustaining the soundness of this view, yet the ability and earnestness with which the solicitor for Mrs. Van Vrankin maintained the opposite view and its apparent harmony with the well-established rule which allows a

mortgagee to pursue all his remedies concurrently, require a statement of the reasons upon which such conclusion is based.

This rule is only an exception to the general rule, that a debtor shall not be harassed by a multiplicity of suits for the same debt at the same time. Resting as it does upon the clearest principles of equity and justice, courts distinguished for their strong common sense and enlightened judgments, would not have tolerated for a moment the exclusion of mortgages from their operation without a substantial and satisfactory reason therefor. If no such reason can be discovered, the exception is left with no higher ground to stand on than a judicial concession to the spiteful and variable moods of capricious and merciless creditors. I would be loath to acquiesce in such a conclusion, as it would amount to an impeachment of the wisdom and justice of the great men by whose genius and industry the splendid systems of English and American jurisprudence have been developed and reared to their present state of perfection.

Now, what is the reason for this exception? Does it not lie in the fact that a mortgagee, in respect to the several remedies which he may employ to enforce the payment of his mortgage debt, enjoys advantages that other creditors do not possess? Clearly it does. Now, adopting this principle as the test of its availability, as a controlling rule of law in a given case, it must be conceded that the concurrent use of two or more remedies adapted to the enforcement of a mortgage debt, each of which would produce precisely the same result, falls

without the reason of the exception because the mortgagee could derive no possible advantage therefrom. Such a case would come within the general rule which compels the election of the forum, and the remedy in which and by which to prosecute his demand. To allow the exception to be stretched beyond the limits necessary to the enjoyment of such a preference or advantage, would be giving judicial sanction to the abuse of the remedial process of this court. The only end that could thereby be subserved would be the accumulation of costs on the mortgagor and perhaps the gratification of a desire to aggravate his misfortunes by imposing this additional burden on his back. Courts of equity as well as courts of law are shy of exceptions to general rules which wink at, much less encourage, such a practice.

The rule or exception under consideration is a common-law principle originally established and announced by the English courts. It still inheres in that great system of law which was introduced or brought into this country by our colonial ancestors as their birthright; so far as it has not been modified by statute or the necessities of our new and changed conditions. In determining, therefore, the extent of its application in our courts, it is necessary to notice the analogy between the remedies which the laws of this State afford to mortgagees, and those which the English common law afforded at, and since, the date of our independence. So far as this analogy holds good, the English rule must prevail; when it does not, our courts are at liberty to adopt such rules or practice as are most consistent with their ideas of justice and the conservation of the rights and interests of the parties concerned.

Let us see now what those remedies are, in England, relative to the concurrent use of which this rule or exception was judicially formulated and promulgated. There a mortgagee may foreclose the equity of redemption in Chancery, bring an action of ejectment in a court of law, and proceed on his bond or other legal security for the debt. But it must be observed that no two are alike in effect. They each accomplish a different result. Foreclosure has for its end the conversion of the mortgaged premises into money and the extinction of the equity of redemption. Ejectment has for its end the recovery of the possession of the property after condition broken leaving outstanding the equity of re-. demption in the mortgagor or his alienees. Foreclosure and ejectment are real remedies. The other is personal by which payment of the debt may be enforced against the personalty of the mortgagor or other realty not embraced in the mortgage. Each of these remedies offer advantages that the others do not. And in order that the mortgagee may have them all at the same time, he is allowed to pursue all his remedies concurrently. While they are *in fieri*, it is impossible to ascertain with certainty which will be the most effectual.

In Delaware, a mortgagee has a right to proceed on his mortgage in equity and at law. In equity by foreclosure; at law by *scire facias.* He also has the right to proceed on his bond or other legal security for the debt. There is no doubt that he may pursue the last-named remedy and either of the others at the same time so that he does not take double satisfaction. The one is not a bar to the other, not so much because the one is a proceeding *in rem*, and the other proceeding *in*

*personam,* but because each secures to the mortgagee advantages which the other does not. The one is auxiliary or supplementary to the other. In what the real remedy may fail to accomplish the personal may supply and *vice versa.* The first two are restricted to the specific pledge, the other is not confined to any particular kind of property, or to any particular property of a particular kind. It is general in its operation.

But can the common-law rule or exception, before referred to, be invoked as authority for the running of the *scire facias* on the mortgage and foreclosure successively, or at the same time? Surely not, for the conditions in this State and in England are very dissimilar. Foreclosure and ejectment, which, in the latter country, are the remedies out of which sprang the necessity for the enunciation of the exception, are totally different not only in form, but in effect. As before seen, they are each intended for a different purpose. Now the remedy by *scire facias* in this State accomplishes precisely the same thing as foreclosure. They both seek the same end, namely, the conversion of the mortgaged premises into money and the extinguishment of the equity of redemption. The latter is equitable foreclosure; the former may be called legal foreclosure, because they are in effect the same. It is just here that the analogy between the specific or real remedies on a mortgage in England, and in this State fails, which sweeps away the ground of contention that was so earnestly made in behalf of the applicability of the exception in our own courts. What good end could be served by allowing foreclosure and *scire facias* to be pursued at the same

time, or, in other words, what advantage could it be to the mortgagee? None at all. By the use of either he could get the land, by the concurrent use of both, he could get no more. The reason then for the exception so far as they are concerned, entirely fails. At the point when the reason ceases, the exception itself should cease. *Cessante actione legis cessat ipsa lex.*

I do not think the authorities cited, when limited to the facts on which the decisions are based, militate very strongly against the position here taken. Beyond the scope determined by the facts, they are *obiter dicta.* It will be found, upon an examination of the cases in which the exception was recognized and acted on as a rule of law, that in nearly all of them the only question before the court was whether a mortgagee could foreclose in equity and proceed on his bond or other security in a court of law at the same time. That was the precise question in the case of Bumell v. Marten, reported in 2 Douglass, at page 401, in which Lord Mansfield declared, " that it had been settled over and over again that a person in such a case (a mortgagee) is at liberty to pursue all his remedies at once." It was also the only question in the case of Scholes v. Sall, and in Scholes & Lefroy, in which Lord Redesdale announced the same doctrine, "that a mortgagee has a right to proceed on his mortgage in equity and on his bond at law at the same time." The right of a mortgagee to pursue these remedies at once is not involved in the present case. That right is not questioned, neither can it be.

In the case of Booth v. Booth, 2 Atk. 343, in which the question before the court was whether a mortgagee

could concurrently proceed in equity to foreclose, and at law in ejectment, Lord Hardwicke pertinently observed, " Though the defendant is foreclosing the equity of redemption here (Chancery), yet he is not precluded from bringing an ejectment at law at the same time unless there is something very particular to take it out of the common case." While in England and in some of the States there is no technical objection to employing both of these remedies at once, as has before been shown, yet the hardships that sometimes attend such a practice, it appears, has not escaped the attention of the judicial mind. For reasons already given, there is a special equity, or to use the language of Lord Hardwicke, "there is something very particular " to exempt a mortgagor in this State from the operation of this rule or exception as to the concurrent use of the *scire facias* and foreclosure remedies provided for the enforcement of the payment of the mortgage debt. I might continue the review of the cases, both English and American, in which this question has been considered to a much greater length, but I have gone far enough in this direction to show, I think, that the authorities when restricted to the points decided, are not antagonistic to the view taken in this case.

Holding to this view, the commencement of foreclosure proceedings in this court was a constructive abandonment of the legal proceedings in the Superior Court, which, as a matter of course, entailed upon the plaintiff therein the costs incident to the same. Let the order, therefore, be drawn directing the payment of the entire fund in question to the Security Trust and Safe Deposit Company.