JOHN NEWBOLD,

*vs.*

MICHAEL NEWBOLD, THOMAS NEWBOLD and WILLIAM BLACK,
Jr., executors, &c., of THOMAS NEWBOLD, deceased,
and the FARMERS' and MECHANICS' BANK in the
City of PHILADELPHIA.

*New Castle, Oct.* 1825.—(*In Vacation.*)

A creditor by bond and mortgage cannot, without some special equity in
favor of the debtor, be restrained from proceeding, at his election,
upon either or both of his remedies. so that he does not take a double
satisfaction.

PETITION FOR AN INJUNCTION.—This was a petition of
John Newbold for an injunction, accompanied by an
affidavit of the petitioner, setting forth, as the ground of
the petition, the following facts, viz :

The petitioner, on the 27th of August, 1823, executed a
mortgage of certain real estate, in Delaware County,
Pennsylvania, to the Farmers' and Mechanics' Bank in the
City of Philadelphia, one of the defendants, to secure the
debt of $15,400, payable with interest, on or before the 27th
day of August, 1825.  Accompanying the mortgage was
the petitioner's bond for the same debt, with a warrant of
attorney for the confession of judgment.  The bond and
mortgage were afterwards assigned by the Bank to the
other defendants, Michael Newbold, Thomas Newbold and
William Black, Jr., executors of Thomas Newbold, deceased,
by whom said securities are now held.

The petition stated that the tract of land in Delaware
County, covered by the mortgage, was exceedingly valu-
able, consisting of one hundred and fifty acres of marsh
meadow in a high state of cultivation ; two hundred and

eighty acres of upland in fine condition, and having upon it a valuable fishery; several very productive stone quarries; a very large and commodious stone house and other buildings; that the property cost the petitioner $65,000, and was worth, even at the then depressed price of real estate, not less than $60,000, and would now bring at a sale by the sheriff, $50,000; that the only liens upon the premises, prior to the mortgage, were three other mortgages thereon given by the petitioner to James C. Fisher and Joseph D. Brown, for securing the payment of $25,000; and that said tract of land was worth far more, and would sell at a sale by the sheriff for more, than would discharge the last mentioned three mortgages and also the first mentioned mortgage, by several thousand dollars; that the proceeds of such a sale would discharge all those mortgages and leave a balance of from seven to ten thousand dollars; that this allegation is not made unadvisedly, but on facts which had recently occurred and which will prove their truth; for said premises were, about the months of December or January next previously, under a judgment obtained subsequent to all the said liens, and by process issuing thereon out of the Court of Delaware County, sold by the sheriff of that county, for $48,100; that is, for $23,100, subject to the principal of the aforesaid three mortgages, amounting to $25,000; and the same was bought by the aforesaid Michael Newbold, Thomas Newbold and William Black, Jr., executors of said Thomas Newbold, deceased, the holders of the aforesaid bond and mortgage assigned by the said Bank; that such purchase money would have discharged the aforesaid four mortgages and left a balance of more than $7000.00; that upon the return of said process of sale, the petitioner knowing that said premises had been sold for much less than their real value, applied to the Court and had the sale set aside. The petitioner further stated that after the sale was so set aside the petitioner, being anxious to furnish to his creditors, who had

a lien on said premises, the full income, rents and profits thereof, to be applied to their debts, conveyed the same to Alexander Helmslie, in trust for the mortgage creditors, and gave the possession of the premises to Michael Newbold, Thomas Newbold and William Black, Jr., in order that they might receive the rents and profits thereof; and they have accordingly ever since retained possession of the premises, and received the rents and profits thereof, amounting as the petitioner believed, to at least $3000 or $4000; that the petitioner was anxious for the sale of the mortgaged premises, in order that the debts secured by the mortgages may be discharged; that the executors were in the receipt of the rents and profits, and had the means in their own hands of effecting a sale of the premises whenever they should think proper. The petitioner further stated, that he was the owner of other large and valuable estates in Pennsylvania; that he owned a plantation in Bucks County, which he purchased at the price of $50,000, and on which he now resides; that he was also owner of fourteen houses situated in Philadelphia, of considerable value. The petitioner further stated that he was the owner of a tract of land, situated in New Castle county, in the State of Delaware, containing about three hundred and ninety-three acres; that this land was on the river Delaware, and that the Chesapeake and Delaware canal passed through it. That a town had been laid out at and near the mouth of said canal, which was on the land of petitioner, streets and alleys located and opened, and building lots laid out. The said land had thus been greatly increased in value, and the petitioner had already entered into contracts for the sale of lots in the town, to the amount of between $50,000 and $60,000, on many of which lots contracts had been made for erecting houses; that there was still a further demand for lots in the town which, the petitioner believed, would continue to increase; that the sale of lots, and the erection of buildings thereon, would necessarily

enhance the value of the remaining lots and the residue of the land ; that lots had been sold on credit for the purchase money, and on improving contracts which compel the purchaser, within a certain time, to erect buildings of a certain size and description; that such sales, though profitable, did not enable the owner of the soil to realize the purchase money at .once ; that the petitioner considered his prospect of realizing an independent fortune out of his land as certain, unless he should be interrupted in his plans by some proceeding that would prevent his giving clear titles to such lots as he should dispose of. Such an interruption he knew was possible, but it was not anticipated by him, as he knew he had given securities on his real estate in Pennsylvania to those creditors to whom he was indebted to any considerable amount, and he never imagined that a creditor, who had his debt fully secured in that State, would wantonly pursue a course that might be of irretrievable injury to the petitioner, by preventing his completing his sales of lots in the said town.

The petition then set forth that the defendants, Michael Newbold, Thomas Newbold and William Black, Jr., executors of Thomas Newbold, dec'd, had caused judgments to be entered upon the petitioner's aforesaid bond in the Supreme Court of the State of Delaware for New Castle county ;. that upon said judgment a writ of *fieri facias* had been issued and the same had been levied upon the before mentioned real estate of the petitioner situated in New Castle county, notwithstanding the said executors held for the same debt a mortgage on the tract of land in Delaware county, in the State of Pennsylvania, of a value far more than sufficient, at a sheriff's sale, to discharge the said debt after paying the prior liens upon it, which tract of land the said executors then had in their actual posession and were in receipt of its profits.

The petitioner charged, as a ground of equity, that by his contract with the Farmers' and Mechanics' Bank he

40

had specifically pledged the tract of land in Delaware county for the payment of the debt mentioned in said mortgage, and for which debt the bond on which the judgment was entered was given ; that this pledge was accepted by the Bank, and the mortgaged premises taken as its specific security. That they were now in the actual possession of said executors, who were in the receipt of the rents and profits ; that the mortgaged premises were admitted by the executors to be more than sufficient to pay the debt due them, and all the prior liens, even if now exposed to a sale by the sheriff; that notwithstanding the ample sufficiency of the mortgaged fund to satisfy the debt which was due the executors and also all prior liens, they were now seeking to abandon that fund, and to come into the State of Delaware with the bond aforesaid, and upon this to coerce a sale of the lands of the petitioner in New Castle county, upon which the said town has been located, thus preventing the petitioner from complying with and completing the contracts for the sale of said town lots, and were proceeding to sacrifice the interest of the petitioner to an extent which would probably ruin him irretrievably.

Sundry exhibits were annexed to the petition shewing certified lists of the judgments and mortgage against the petitioner in the State of Pennsylvania ; also the proceedings for the sale of the land in Delaware county, in the petition referred to, and the proceedings in execution of the judgment entered against the petitioner in New Castle county.

The prayer of the petition was that the defendants might be restrained by a writ of injunction from further proceeding under their said judgment and execution against the real estate of the petitioner in New Castle county.

The petition came before the Chancellor in vacation, Oct. 1826, upon a motion *ex parte* for an injunction.

*Black*, for the petitioner.

The Chancellor refused to award the writ, and assigned the following as his reasons :

Upon the best consideration which I can give to the subject, I do not think that upon the case made in the petition the writ of injunction should be ordered.

It seems to me to be clearly and reasonably settled that a mortgagee may use all the remedies upon a bond and mortgage which the law affords, at the same time, and consequently any one of them which he prefers ; but that he shall not take a double satisfaction for the debt.    In *Booth vs. Booth*, 2 *Atk.* 343, Lord Hardwicke says, " though " the defendant is foreclosing the equity of redemption " here, yet he is not precluded from bringing an ejectment " at law at the same time, unless there is something very " particular to take it out of the common case."   And Lord Redesdale, in 1 *Sch. & Lef.* 176, states the general rule to be, that " where a party is suing in this Court he " shall not be allowed to sue at law for the same debt. " But the case of a mortgage is an exception to this rule ; " he has a right to proceed on his mortgage in equity,and " on his bond at law at the same time."   In the case before Lord Redesdale there was something ' very particular,' (as Lord Hardwicke said), which formed an exception to the general principle, but not applicable to the present ques·tion.    And in 3 *Johns. Ch. Rep.* 331, Chancellor Kent says it seems to be generally admitted in the books, that the mortgagee may proceed at law on his bond or covenant at the same time that he is prosecuting his mortgage in Chancery.

If the mortgagee may thus proceed, both at law and in equity, he certainly may have the fruit of both, or of either, so that he does not take a double satisfaction ; and whether he proceeds at law on the bond and mortgage, or

at law on the bond and in equity on the mortgage, the principle is the same. Here, the mortgagee is not proceeding on the mortgage. In *1 Yeates R.* 9, where a suit was brought on a bond which accompanied a mortgage, the Court would not prevent the plaintiff from levying it on what land he pleased. The case of *Holditch vs. Mist*, 1 *P. Wms.* 695, is stronger than the present, and yet the Court would not compel the party to resort to a particular fund but left him to his common remedy. The case of *Folliott vs. Ogden*, 1 *H. Blk.* 124, and *Wright vs. Nutt*, 1 *H. Blk.* 136 : 3 *Bro. Ch. Rep.* 326, are not applicable. In 3 *Bro. Ch. Rep.* 334–5, that case of Wright was argued on this principle, that Sir James Wright had all his property in Georgia confiscated, was himself a banished man, that the fund to which the creditors should resort was the confiscated property in the hands of the State of Georgia, and that the person who had access to a fund for the payment of his debt, to which the debtor had not access, should make it available before he comes upon the debtor personally. Here, the debtor has access to all the funds, and may avail himself of all of them; and there can be no reason for compelling the creditor to resort to one alone. His remedy upon the bond is as much his right as a remedy upon the mortgage, and there does not appear to be any equity in compelling him to resort to one or the other, especially as there is no oppression in the act, although there may be some inconvenience, and indeed an entire frustration of the petitioner's scheme in establishing a own at the mouth of the canal. In *Wright vs. Simpson* 6 *Ves. Jr.* 714, the former cases of Wright, although perhaps not over-ruled, are not assented to by Lord Eldon. *Hays vs. Ward*, 4 *Johns. Ch. Rep.* 123, has some allusion to this subject, but that case relates mainly to the rights of a surety.

According to the petitioner's affidavit he has had a large surplus of assets for the payment of his debts. They may be thus stated :

ASSETS.

| | |
|---|---|
| Estimated value of the mortgaged premises, · | $50,000.00 |
| Plantations in Bucks county, purchased for | 50,000.00 |
| Fourteen houses in Philadelphia, estimated at | 14,000.00 |

| | |
|---|---|
| Total, | $114,000.00 |

LIABILITIES.

| | | |
|---|---|---|
| The three prior mortgages, | $25,000.00 | |
| The present bond and mortgage, | 15,400.00 | |
| The subsequent judgment, | 34,668.02 | |
| | 75,068.02 | |
| Add for interest, say, | 20,000.00 | · 95,068.02 |
| Surplus of assets, | | $18,931.98 |

With all these funds in the power of the petitioner, it may be asked why he does not pay off the bond and mortgage? I see no reason for taking this case out of the common course.

But it appears that the plaintiffs at law have met with real difficulties in getting this money in Pennsylvania. The mortgaged land did sell at a sale made by the sheriff, under another judgment, for a sum sufficient to discharge this and all the other mortgages, and to leave a balance of from $7,000 to $10,000 ; and yet, because the petitioner conceived that the property had been sold for much less than its real value, he applied to the Court and had the sale set aside. Now, this proceeding interposes a serious difficulty ; for it may be inferred that the highest and best price bidden is not to be taken as the measure or standard of the value, but that a sale by the sheriff is to depend upon some imaginary value. It is not alleged that there was any irregularity in the sale, nor any unjust or unfair conduct in the sheriff, or in any other person ; nor

indeed was any security given that there should be a proper advance on a second sale. Under all these circumstances it seems to me that no ground is laid for the interposition of the Court of Chancery. The petition states that after the sale was set aside the petitioner conveyed the mortgaged premises to Alexander Helmslie, in trust for the mortgage creditors, and gave the possession of them to Michael Newbold, Thomas Newbold and William Black, Jr., to receive the rents and profits ; and that they have accordingly ever since retained the possession thereof, and received the rents and profits, as petitioner believes, to at least the amount of three or four thousand dollars ; and that the executors have the means of effecting a sale of the premises when they think proper. The date of this trust deed is not given, but it was after the 16th or 17th of January, 1826, and whether before or after the judgment was entered and execution issued in New Castle county does not appear. The terms of this contract are not stated, and I can form no opinion how far it ought to affect or restrain the plaintiffs at law from proceeding on their judgment and execution. The fee simple, I suppose, is vested in Helmslie, in trust ; and that is all that can, with certainty, be inferred. It does not appear, to whose benefit the rents are first to be applied. These plaintiffs at law have not the first mortgage ; and it is to be supposed that the oldest mortgages would be preferred. However, enough of this trust sale is not given to furnish any ground upon which I can satisfactorily award the injunction. Rents to the amount of three or four thousand dollars, since January last, seem to be a monstrous sum, unless there be something very uncommon in the production of the farm, fertile as it may be, and profitable as it may be from its local situation. The transaction seems to be an extraordinary one for executors to engage in, and should be more fully explained to make it the ground for granting the prayer of the petition.

Amended petition—injunction.

Petition dismissed.

Afterwards, on the 26th of October, 1826, another petition and affidavit of the same petitioner was presented to the Chancellor praying the same relief as did the former. This latter petition and affidavit alleged as a further ground of equity that after the sale by the sheriff of the tract of land in Delaware county, Pennsylvania, and the setting aside of the same by the Court, the petitioner proposed to the defendants, the executors of Thomas Newbold deceased, to convey and assign the said mortgaged premises to a trustee for the creditors, with power to sell the same and to apply the proceeds in discharge of the liens thereon; that said proposal was acceded to by the executors, who nominated for such trustee one Alexander Helmslie; that thereupon, the petitioner executed such conveyance to said Helmslie, upon the trust aforesaid; and pursuant thereto the executors took possession of the premises; that said conveyance was made with the express understanding and agreement that the property so conveyed was to be first resorted to for the payment of the liens against it, according to their priority.

Upon this petition an injunction was awarded, as prayed for.