JUNE ELLEN GLANDING, by Edith G. Maharty, her guardian *ad litem*,

Defendant Below, Appellant,

*vs.*

INDUSTRIAL TRUST COMPANY, Administrator *c.t.a.* of Herman Glanding, Deceased,

Complainant Below, Appellee,

and

HOWARD S. GLANDING and REBA W. TAYLOR,

Defendants Below, Appellees.

*Supreme Court, On Appeal, November 26, 1945.*

500

RICHARDS, C. J., RODNEY, SPEAKMAN, TERRY, and CAREY, JJ., sitting.

*James R. Morford* and *Thomas Cooch,* for appellants.

*George C. Hering,* for Howard S. Glanding and Reba W. Taylor.

*William Poole,* for Industrial Trust Co., administrator.

TERRY, Judge, delivering the opinion of the majority of the court:

It is contended by certain of our associates that the court below was without jurisdiction because there exists a complete and adequate remedy at law. In support of their reasoning they rely upon the existence of two statutes: First—*Section* 4367, *Revised Code of Delaware* 1935— which in part is as follows:

"Provided, that the Chancellor shall not have power to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other Court, or jurisdiction, of this State; but that where matters, determinable at common law, shall be brought before him in equity, he shall remit the parties to the common law * * *."

Second—*Chapter* 143, *Volume* 42, *Laws of Delaware* —which in part is as follows:

"The jurisdiction of the Orphans' Court shall extend to and embrace the distribution of the assets and surplusage of the estates of decedents among the persons entitled thereto in all cases where such jurisdiction is invoked as hereinafter provided * * *."

An administrator or any person claiming to have an interest in the estate to be distributed may, at any time after any account has been filed, apply to the Orphans' Court for a decree of distribution of the estate among the parties entitled thereto. Then follows the required contents of the petition and certain action to be taken by the court and provisions for a hearing and the taking of evidence. The statute then proceeds—

"If, upon the said hearing, the Court shall be satisfied that the estate or any part thereof may then be distributed, the Court shall make a decree determining the distribution of the estate then available for distribution to the person or persons who are by law entitled to the same * * *."

It is contended that by reason of the enactment of *Chapter* 143, *Volume* 42, conferring a complete and adequate remedy at law, the quoted portion of *Section* 4367 limited

the Court of Chancery from exercising any power that it might have had as of the date of the enactment of said *Chapter* 143, aforesaid, in entering decrees of distribution.

Upon the immigration of our ancestors to this country from England they adopted as a safe rule of conduct the common law of England, which they considered to be their birthright. They cherished it, and for them it represented, so to speak, a charter of liberty. The common law, thus adopted, when defined in its broad and comprehensive sense represented a system of jurisprudence of remedial justice as administered in England by the courts of equity as well as those courts that administered the common law itself. The colonists considered the rights of a free people were to be construed not in a narrow technical sense but rather in a broad and comprehensive sense, and in this sense equity is as much common law as is that law which is administered in tribunals other than those of equitable jurisdiction.

Judge Woolley, in *Paragraph* 56 *of Volume* 1, in his work on *Delaware Practice* states,

"An examination of the early history of the colonial judiciary of Delaware discloses that equitable jurisdiction was exercised by the same courts that had jurisdiction of matters of law."

And he further states,

"It may safely be affirmed that the whole body of equity principles both of right and remedy was brought hither by our ancestors, together with the common law, on their immigration from England as part of their heritage of liberty."

And further,

"Hence, the Court of Chancery of the State of Delaware inherited its equity jurisdiction from the English Courts; and in its organization and proceedings, especially in matters of pleading, practice and evidence, the Court of Chancery of the State of Delaware, has adhered more closely to the English Court of Chancery and to English precedents than those of any of her sister States."

Therefore, it appears that the equity jurisprudence from the earliest date in this State was founded upon, coextensive with, and in most respects, conformable to that of England.

It must be said that from the close of the reign of Charles II the court of equity in England had jurisdiction to superintend the administration of estates, and to decree a distribution of the residue after payment of all debts and charges among the parties entitled either as legatees or distributees. 1 Storey, (*Tenth Edition*) (*Redfields*), 543; *Walker v. Caldwell*, 8 *Del. Ch.* 91, 67 *A.* 1085. So, it was under the jurisdiction as established by our colonial ancestors that the jurisdiction of our earliest courts inherited as a right or power that principle which gave to the judges thereof jurisdiction to enter decrees of distribution.

Now this principle as established was indelibly written into the *Act of* 1726-1736, wherein the first Court of Chancery was created in this State. Under *Section* 21 of said Act the following is recited:

"And be it further enacted by the authority aforesaid, that there shall be a Court of Equity held by the Justices of the said respective County Courts of Common Pleas four times a year at the respective places, and near the said times as the said Courts of Common Pleas are held in every county of this government; and that the Prothonotary of the Common Pleas shall be the Register of the said Courts of Equity in every county, which said justices, or any three of them, within the limits of their commissions and authorities to them appointed as is aforesaid, shall have full power, and are hereby impowered and authorized, to hear and decree all such matters and causes of equity as shall come before them in the said courts, where the proceedings shall be as heretofore by bill and answer, with such other pleadings as are necessary in Chancery Courts, and proper in these parts, with power also for the said Justices of the respective Courts of Equity, to issue further all manner of Subpoena's, and all other process as may be needful to oblige and force defendants to answer suits there, as also to award commissions for taking answers and examining witnesses, and to grant injunctions for staying suits in law, and stopping wastes, as there may be occasion, observing, as near as may be, the rules and practice of the High Court of Chancery in Great

Britain, with powers to make orders and award all manner of process, and do all other things necessary for bringing causes to hearing, and to force obedience to their decrees in equity, which may be by imprisonment of bodies, or sequestration by lands, and admit bills of reviver, as the case may require."

And, by *Section* 25, of said Act the following appears:

"Provided also, that nothing herein contained shall give the said Justices any power or authority to hear, decree or determine in equity, any matter, cause or thing, wherein sufficient remedy may be had in any other court or before any other magistrate or judicature in this government, either by the rules of the common law, or according to the tenor and direction of the laws of this government, but that when matters determinable at common law shall be brought before them in equity, they shall refer or remit the parties to the common law * * *."

In passing it will be noted that the jurisdiction conferred under the *Act of* 1726-1736 was coextensive with the jurisdiction of the High Court of Chancery of Great Britain, subject only to the construction and effect to be given the provisions of *Section* 25 of said Act.

Our first Constitution was adopted in 1776. Under *Article* 12 thereof Courts of Common Pleas and Orphans Courts were created, and by *Article* 13 thereof the Justices of the Courts of Common Pleas were empowered to hold inferior Courts of Chancery as heretofore held until the Legislature should otherwise direct.

Our second constitution, adopted in 1792, under *Article* VI, *Section* 14, recited in part as follows:

"The equity jurisdiction heretofore exercised by the Judges of the Court of Common Pleas shall be separated from the common-law jurisdiction, and vested in Chancellor, who shall hold Courts of Chancery in the several counties of this State."

Our third constitution was adopted in 1831, and under *Article* VI, *Section* 13 thereof, the following is recited:

* * * "The chancellor shall exercise all the powers which any law of this State vests in the chancellor besides the general powers of the Court of Chancery * * *."

Our fourth and present constitution was adopted in 1897, and under *Article* IV, *Section* 10 thereof, it is provided:

"The Chancellor shall hold a Court of Chancery. This court shall have all the jurisdiction and powers vested by the laws of this State in the Court of Chancery."

Now the substance of *Section* 25 of the *Act of* 1726-1736, aforesaid, at present appears in the *Revised Code of* 1935 under *Paragraph* 4367 thereof, and it will be admitted arguendo that this statute has remained on the statute books since approximately 1732, the date of the enactment of the *Act of* 1726-1736.

In order to determine what was written into the constitution of 1776 concerning equitable jurisdiction, we must decide upon the proper construction to be given to *Sections* 21 *and* 25, respectively, of the *Act of* 1726-1736. There can be no difficulty in construing *Section* 21, as under said section all of the jurisdiction theretofore exercised by the High Court of Chancery of Great Britain was by said section conferred. It is by the use of the language employed under *Section* 25, now *Section* 4367 *of the Code of* 1935, which forms the basis of the present controversy, and the question presented is: Did *Section* 25 of said Act limit the exercise of equitable jurisdiction in the event the Legislature conferred a similar jurisdiction at law and provided a remedy complete in all respects?

After a careful study of the statute law, together with certain reported cases, it is our conclusion (1) that the Legislature in enacting *Section* 25 did nothing more than declare the existence of an equitable principle, which in fact existed without its enactment; and (2) that no positive restriction or limitation of the exercise of equitable jurisdiction resulted therefrom.

Chancellor Saulsbury in the case of *Fox v. Wharton,* 5 *Del. Ch.* 200, in construing *Section* 25 of said Act stated:

"Now this supposed limitation amounts substantially to no limitation at all, for the reason that where there is a complete remedy at law courts of equity do not assume to exercise jurisdiction. This is a fundamental principle of equity jurisprudence, and it is this principle which is incorporated in § 25 * * *. A cause in which there is a complete remedy at law is not a matter and cause of equity at all. The section cited (Section 25), therefore, is nothing but a legislative declaration of what would have existed without it. * * *"

Likewise, Chancellor Curtis in the case of *Kahn v. Orenstein*, 12 *Del. Ch.* 344, 114 *A.* 165, 167, stated:

"Statutes such as * * * denying to the Chancellor power to determine any matter wherein sufficient remedy may be had at law is declaratory of a limitation established from ancient times irrespective of statutes." 1 *Pomeroy Equity Jurisprudence, Paragraphs* 295 and 344.

See also the observations made by Chancellor Nicholson in the case of *Walker v. Caldwell*, 8 *Del. Ch.* 91, 67 *A.* 1085.

In stating our conclusions we are not unmindful that Chancellors Johns, Sr., Johns, Jr., and Nicholson have indicated otherwise by inferring that *Section* 25 operated as a direct and positive limitation on the equity jurisdiction. *Beeson v. Elliott*, 1 *Del. Ch.* 368, 386; *Jefferson v. Tunnell*, 2 *Del. Ch.* 135; *Equitable Guarantee & Trust Co. v. Donohoe*, 8 *Del. Ch.* 422, 45 *A.* 583.

It is said that the observations made by Chancellor Saulsbury concerning *Section* 25 were not necessary, for the reason that the case, *id.*, before him concerned matters over which there did not exist a complete and adequate remedy at law. However, the late Chancellor Wolcott in the case of *Hollis, Adm'r., v. Kinney*, 13 *Del. Ch.* 366, 120 *A.* 356, 358, stated:

"In *Fox vs. Wharton* it was remarked that the legal remedy there under discussion, viz., foreclosure of a mortgage at law, was not adequate or complete. That being so it may be said that the general language of the Chancellor, to the effect that the equity jurisdiction could not be destroyed by such statutory language as appears in our statute,

was dictum. The dictum, however, appears to have been uttered after careful and deliberate study of the question."

It is, therefore, quite clear to us that the jurisdiction of the Court of Chancery as written by implication into the *Constitution of* 1776 is as that set forth under *Section* 21 of the *Act of* 1726-1736, and *Section* 25 thereof represents nothing more than a legislative direction or declaration of what would have existed without it, and did not operate as a restriction or limitation of the exercise of equitable jurisdiction. Therefore, the equitable jurisdiction under the *Constitution of* 1776 embodied that complete system of equity jurisprudence as administered by the High Court of Chancery of Great Britain and as brought to this country by the colonists and later enacted into the statute of 1726-1736, subject only to the proper application of the ancient rule that equity will not assume to exercise jurisdiction where there exists a complete and adequate remedy at law. Although the Legislature under subsequent constitutions has provided for additional equity jurisdiction, yet the underlying principles as established in the *Constitution of* 1776 have not been disturbed. The continuation upon our statute books of the substance of *Section* 25 of the *Act of* 1726-1736, now appearing under *Paragraph* 4367 of the present *Code*, does not alter in any respect our conclusion, as the continuation of a statute containing constitutional provisions is but merely declaratory of the constitutional provision itself and must be construed as such. However, if necessity requires a construction of *Paragraph* 4367 in the light of equitable jurisdiction aside from the constitution, we say the same in reference thereto that we have heretofore stated regarding *Section* 25 of the *Act of* 1726-1736.

Having defined the source of equitable jurisdiction as the same exists in the Court of Chancery of this State, and having determined the proper import to be given *Section* 25 of the *Act of* 1726-1736 as of the adoption of our first constitution in 1776, and having defined the jurisdiction

subsequent thereto, we now look to legislative enactments wherein jurisdiction previously exercised in equity has been conferred upon other tribunals, together with remedies complete and adequate in all respects.

Our attention is first directed to the statute of 1721, wherein an Orphans' Court was created. 1 *Del. Laws, Chapter XXXI. a.* Under the provisions of this Act the Judges of the Orphans' Court were given full power to exercise the jurisdiction granted to the Orphans' Court under an Act passed at the same session entitled, "An Act for the Better Settling Intestate Estates," under which the Orphans' Court was empowered to call "administrators to account for and touching the goods of any person dying intestate; and upon hearing and due consideration thereof, to order and make just and equal distribution of what remaineth clear, (after all debts, funerals and just expenses of every sort first allowed and deducted) amongst the wife and children, and childrens children (if any such be) or otherwise to the next of kindred to the deceased person * * *." 1 *Del. Laws, Appendix* 55.

This law was terminated in 1829 upon the enactment of an Act entitled, "An Act Concerning the Probate of Wills and the Administration of Personal Estates of Deceased Persons." 7 *Del. Laws,* 217.

The *Act of* 1726-1736 was passed in or about the year 1732, and it will be seen from that time until the termination of the Orphans' Court statute in 1829 that the statute of 1721 and the provisions as set forth under *Section* 25 of the *Act of* 1726-1736 were in effect.

Chancellor Ridgely in 1822 in the case of *Patton, Executor of Morgan Jones, v. Zachariah Jones, et al., 3 Del. Cas. Boorstin,* 11, assumed jurisdiction wherein the complainant prayed for a construction of the will of Morgan Jones and the entry of a decree of distribution in accordance therewith.

No manuscript notes of any case adjudged by the Court of Chancery can be found prior to the year 1814; this being so it cannot with certainty be said that the Court of Chancery did not exercise a concurrent jurisdiction with the Orphans' Court until 1829 concerning the entry of decrees of distribution in intestate estates. On the other hand, it can be logically said that the jurisdiction of the Court of Chancery was not abrogated by the language employed under the *Act of* 1721. There is a complete absence of negative words, and we find no intent to make the Orphans' Court jurisdiction exclusive. We are of the opinion that the Orphans' Court under the *Act of* 1721 was given a concurrent jurisdiction with the Court of Chancery concerning the power to enter decrees of distribution in intestate estates.

What, if anything, occurred in 1829 upon the termination of the *Orphans' Court Act of* 1721? It seems to us it must be said that the exclusive power to enter decrees of distribution both as to testate and intestate estates was vested in the Court of Chancery and there remained until the enactment of *Chapter* 184, *Volume* 38, *Laws of Delaware,* 1933, which under the provisions thereof provided in part as follows:

"An executor or administrator or any person claiming to have an interest in the estate to be distributed may, at any time after any account has been filed by an executor or administrator, apply for a decree of distribution to the Register of Wills, who shall, if it appears to the Register that the estate or any part thereof may be distributed, make such a decree determining the distribution of the estate then available for distribution to the person or persons who are by law entitled to the same. * * *"

*Chapter* 184, aforesaid, was repealed in 1939 and *Chapter* 143, *Volume* 42, *Laws of Delaware* was enacted in lieu thereof, which provides in part as follows:

"3867. Sec. 69. Jurisdiction of Orphans Court: Distribution of Estates of Decedents; Procedure For; Notice; Hearing; Decree; Appeal:—The jurisdiction of the Orphans Courts shall extend to and em-

brace the distribution of assets and surplusage of the estates of decedents among the persons entitled thereto in all cases where such jurisdiction is invoked as hereinafter provided.

"An executor or administrator or any person claiming to have an interest in the estate to be distributed may, at any time after any account has been filed by an executor or administrator, apply to the Orphans Court in the county in which letters testamentary or of administration were granted upon the estate to be distributed, by written petition filed in said court by an attorney admitted and licensed to practice therein, for a decree of distribution of the estate among the persons entitled thereto. * * *

"If, upon the said hearing, the Court shall be satisfied that the estate or any part thereof may then be distributed, the Court shall make a decree determining the distribution of the estate then available for distribution to the person or persons who are by law entitled to the same. * * *"

A comparison of the *Orphans' Court Act of* 1721 with *Chapter* 143, *id.,* is interesting. It will be remembered that under the *Act of* 1721 the jurisdiction given to the Orphans' Court pertained to intestate estates only, while the jurisdiction given to the Orphans' Court under *Chapter* 143 pertains to testate as well as intestate estates, and the said jurisdiction will be invoked upon the application of an executor or administrator or any interested party.

It cannot be said too forcefully that the general powers of the Court of Chancery refers to that complete system of equity as administered by the High Court of Chancery of Great Britain, and a proper interpretation of the constitutions of this State leads to but one conclusion; that is, that the Court of Chancery shall continue to exercise that complete system of equity jurisdiction in all respects until the Legislature of this State shall provide otherwise, as by granting the exercise of a part of that jurisdiction exclusively to some other tribunal.

There exist many statutes at law providing a complete and adequate remedy over matters that prior to the enactments fell within the jurisdiction of equity, and the courts of this State throughout the many decisions have directly

or by implication at all times recognized a coextensive jurisdiction existing between law and equity commonly referred to as a concurrent jurisdiction. *West, et al., v. Evans,* 1 *Del. Ch.* 122; *Kirkwood v. Mitchell,* 1 *Del. Ch.* 130; *Killen v. Adams,* 1 *Del. Ch.* 184; *St. James' Church v. Walker,* 1 *Del. Ch.* 284; *Walker v. Caldwell,* 8 *Del. Ch.* 91, 67 *A.* 1085; *Van Vrankin v. Roberts,* 7 *Del. Ch.* 16, 29 *A.* 1044; *Newbold v. Newbold,* 1 *Del. Ch.* 310. See also 30 *C.J.S., Equity,* § 21, *p.* 341.

Now we reach the question as to whether or not the Legislature by the enactment of *Chapter* 143 aforesaid limited or restricted the court of equity in exercising its jurisdiction to enter a decree of distribution upon a proper application. It is said that, irrespective of the construction to be placed on *Section* 25 of the *Act of* 1726-1736, or the construction of the language as by implication written into the constitutions or the provisions of *Paragraph* 4367 *of the Code of* 1935, that the Court of Chancery in the present case would not have had jurisdiction even under the application of the ancient rule, for the reason that when the remedy at law is adequate and complete, jurisdiction in equity will not be exercised and that there could not be a concurrent jurisdiction, because they say the very foundation of concurrent jurisdiction is predicated upon the inadequacy of the remedy at law.

Of course, we concede the general rule to be as stated; that is, "the foundation of concurrent jurisdiction is predicated upon the inadequacy of the legal remedy." Nevertheless, there are well-recognized exceptions to this rule, and a concurrent jurisdiction will be found to exist in many cases where the legal remedy afforded is adequate and complete in all respects. For example, whenever the statutes conferring the new jurisdiction upon the law courts are permissive only, or whenever they not only do not contain any expressed prohibitory language, but also do not indicate, from all their provisions taken together, any

clear intent to restrict the equitable jurisdiction, that jurisdiction remains unaffected, and may still be exercised; even though the rights protected and the remedies conferred have by the statutes been made legal, and even though a relief ordinarily sufficient, even amply sufficient and complete, may be obtained through the actions at law. Of course, the effect of the statute creating the legal remedy depends upon the legislative intent, and unless the statute shows a clear and certain intent that the equitable jurisdiction is no longer to be exercised under the matters within the scope of the statute, then the equitable jurisdiction has not been abrogated. 1 *Pomeroy*, (*5th Edition*) 260; *Sweeny v. Williams*, 36 *N.J. Eq.* 627, affirming *Sweeney v. Williams*, 36 *N.J. Eq.* 459; *Miller v. United States Casualty Co.*, 61 *N.J. Eq.* 110, 47 *A.* 509.

*Pomeroy* in his work on equity jurisprudence in *Volume* 3, (*3rd Edition*) *Paragraph* 1153, states:

"One fundamental principle should be constantly kept in mind; it underlies all particular rules, and furnishes the solution for most of the special questions which can arise. In all those states which have adopted the entire system of equity jurisprudence, whatever be the legislation concerning the powers and functions of the probate courts, and whatever be the nature and extent of the subjects committed to their cognizance, the original equitable jurisdiction over administrations does and must still exist, except so far and with respect to such particulars as it has been abrogated by express prohibitory, negative language of the statutes, or by necessary implication from affirmative language conferring exclusive powers upon the probate tribunals. This equitable jurisdiction may be dormant, but, except so far as thus destroyed by statute, it must continue to exist, concurrent with that held by the courts of probate, ready to be exercised whenever occasion may render or require it expedient."

The jurisdiction conferred under *Chapter* 143 aforesaid is but a permissive or conditional jurisdiction and in no respects is it exclusive or absolute. No expressed prohibitory language appears, nor are we able to find a clear intent from the language employed to restrict or limit the exercise of equitable jurisdiction. In fact, it will be seen

that jurisdiction arises only in those cases wherein it is specifically invoked.

We are not unmindful of the growing tendency on the part of courts of other jurisdictions to read into all legislative enactments, conferring new legal remedies over matters theretofore reposed in equity, a legislative intention to make the remedy at law, if adequate, exclusive. The source of our equity jurisdiction and its development by our able Chancellors forbids us from concurring in such a construction or interpretation of any statute conferring a new legal remedy unless it be clear from the language employed therein that the Legislature intended by said enactment to abrogate the pre-existing equitable jurisdiction.

It is our opinion that a person seeking his remedy in a case such as the present is given by implication the right of election whether to proceed in the Orphans' Court or the Court of Chancery—both courts having concurrent jurisdiction and the power upon proper application to enter decrees of distribution of assets of decedents' estates.

The jurisdiction assumed by the court below must be upheld, and a decree will be signed accordingly.

RODNEY, Judge, dissenting:

The facts and pertinent provisions of the statutes are set out in the majority opinion.

This case calls for a somewhat critical and detailed examination of two things, (1) the jurisdiction of the Court of Chancery of Delaware as originally established or continued by our constitutional provisions, and (2) the effect on that jurisdiction of the provisions of the concluding portion of *Sec.* 4367, *Revised Code of* 1935, as set out in the statement of facts. Having considered the general jurisdiction of the Court of Chancery, then attention will be directed to the precise question of jurisdiction as applied to intestate estates and the distribution thereof.

An intelligent study of the jurisdiction can best be had by a consideration of the matter by chronological sequence and by tracing, step by step, the provisions to their original source.

The present *Constitution of* 1897, by Art. IV, *Section* 10, provides:

"The Chancellor shall hold the Court of Chancery. This court shall have all the jurisdiction and powers vested by the laws of this State in the Court of Chancery."

This was no new jurisdiction in 1897, for both the office of Chancellor and the Court of Chancery had previously existed. The exact language of *Art.* IV, *Sec.* 10 of the *Constitution of* 1897 is found as *Art.* VI, *Sec.* 5 in the *Constitution of* 1831.

Both the office of Chancellor and the jurisdiction of the Court of Chancery had also existed prior to the *Constitution of* 1831, and to this former authority we must now look.

The *Constitution of* 1792 is an important step in our investigation, and to it some special consideration must be given. This constitution is important because for the first time in it arises the distinction between the jurisdiction of the Court of Chancery and the office of Chancellor who should exercise such jurisdiction. The *Constitution of* 1792 did not create, but continued the jurisdiction of the Court of Chancery. On the other hand, it created the office of Chancellor to exercise such jurisdiction. The origin and reasons for the change are shrouded in much obscurity, and no debates of the Convention exist. The Convention had two sessions. It met Nov. 29, 1791, and adjourned Dec. 31, 1791. It met again June 7, 1792, and adjourned June 12. On Dec. 17, 1791, a form of constitution was presented by the committee, which placed with the Chief Justice of the newly formed and state-wide Court of Common Pleas the equitable jurisdiction theretofore vested

in the County Courts of Common Pleas. On December 28, 1791, a resolution was adopted in the Convention in the exact terms as found in the Constitution when finally promulgated as *Art.* VI, *Sec.* 14:

"The equity jurisdiction heretofore exercised by the judges of the court of common pleas shall be separated from the common-law jurisdiction, and vested in a chancellor, who shall hold courts of chancery in the several counties of this State."

Because, however, the *Constitution of* 1792 merely vested in the Court of Chancery (presided over by the Chancellor) "the equity jurisdiction heretofore exercised by the judges of the court of common pleas" we must still determine what that jurisdiction had been.

The *Constitution of* 1776 was the first constitution of the State of Delaware, and provided by *Art.* XII for courts of "common pleas and orphans' courts" in each county. By *Article XIII* it provided:

"The justices of the courts of common pleas and orphans' courts shall have the power of holding inferior courts of chancery as heretofore, unless the legislature shall otherwise direct."

Because the jurisdiction as conferred on the Courts of Common Pleas was "as heretofore," so we are immediately remanded to the source of that jurisdiction, as found in *Chapter* 54 *A, Vol.* 1, Laws of Delaware, *page* 121. The exact date of the Act has not been definitely determined. It was passed during the administration of Gov. Patrick Gordon, so its date may be fixed as between 1726 and 1736. Chief Justice Gilpin in *Flanagin v. Daws, 2 Houst.* 476, *at page* 495 fixes the date as "probably about the year 1732," but his authority for so doing is unknown. From this *Act of* 1726-1736 stems the future history of all the courts, both at law and equity, and it may well be considered as the source of both.

This Act, passed between 1726-1736, and providing by *Section* 21 for the creation of a court of equity, by *Section*

25 prescribed the limitation of the jurisdiction of said court. The two sections are as follows:

"Sect. 21. And be it further enacted by the authority aforesaid, That there shall be a Court of Equity, held by the Justices of the said respective County Courts of Common Pleas four times a year at the respective places, and near the said times as the said Courts of Common Pleas are held in every county of this government; and that the Prothonotary of the Common Pleas shall be the Register of the said Courts of Equity in every county; which said justices, or any three of them, within the limits of their commissions and authorities to them appointed as is aforesaid, shall have full power, and are hereby impowered and authorized, to hear and decree all such matters and causes of equity as shall come before them in the said courts, where the proceedings shall be as heretofore by bill and answer, with such other pleadings as are necessary in Chancery Courts, and proper in these parts, with power also for the said Justices of the respective courts of equity, to issue forth all manner of Subpoena's, and all other process as may be needful to oblige and force defendants to answer suits there, as also to award commissions for taking answers and examining witnesses, and to grant injunction for staying suits in law, and stopping wastes, as there may be occasion, observing, as near as may be, the rules and practice of the High Court of Chancery in Great Britain, with powers to make orders and award all manner of process, and do all other things necessary for bringing causes to hearing, and to force obedience to their decrees in equity, which may be by imprisonment of bodies, or sequestration of lands, and admit bills of reviver, as the cause may require."

"Sect. 25. Provided also, that nothing herein contained shall give the said Justices any power or authority to hear, decree or determine in equity, any matter, cause or thing, wherein sufficient remedy may be had in any other court or before any other magistrate or judicature in this government, either by the rules of the common law, or according to the tenor and direction of the laws of this government, but that when matters determinable at common law shall be brought before them in equity, they shall refer or remit the parties to the common law; * * *"

It will be seen that *Sec.* 25 of the *Act of* 1726-1736, as above quoted is substantially the same language that now exists as *Section* 4367 of the *Revised Code*, as set out in the statement of facts. Almost the exact statutory language has always existed in this State.

The jurisdiction of equitable causes given by *Sec.* 21 was, as we have seen, translated into constitutional provisions, and has appeared in every constitution of the State. No new jurisdiction was given by these constitutions, however, but that same jurisdiction was continued that existed under the original *Section* 21 of the *Act of* 1726-1736. The provision of the *Constitution of* 1792, it will be remembered, was the "jurisdiction heretofore exercised by the judges of the court of common pleas." That jurisdiction was as expressly limited by *Sec.* 25 of the same Act because the grant of jurisdiction by *Sec.* 21, together with its limitation of that jurisdiction by *Sec.* 25, is the jurisdiction which existed and which has been continued from that time.

*Section* 25 of the *Act of* 1726-1736, while not carried into the subsequent constitution of the State, has been continued as a statutory provision in every codification, and now appears as *Sec.* 4367, *Revised Code of* 1935. The language of the original sections was somewhat changed by the *Revised Code of* 1852, but the substance has remained the same.

The first portion of the *Section* 4367, the presently material portion, after creating the equitable jurisdiction in the Court of Common Pleas, reads:

"Provided that nothing herein contained shall give the said Justices any power or authority to hear, decree or determine in Equity any matter cause or thing wherein sufficient remedy may be had in any other Court or before any other magistrate or judicature in this government, either by the rules of the common law or according to the tenor and directions of the laws of this government but that when matters determinable at common law shall be brought before them in Equity they shall refer or remit the parties to the common law."

The similarity and analogy of our own situation in Delaware with that of the courts of the United States prior to the *Federal Rules of Civil Procedure,* 1938, 28 *U.S.C.A.* following *Section* 723c, is too marked to escape comment. In both jurisdictions courts of equity were created with no express or all-inclusive enumeration of powers, thus

drawing to the courts expressly or impliedly the powers then exercised by the courts of equity in England. In each jurisdiction, however, both in Delaware and in the Federal courts, limitations were placed upon the exercise of the equity powers. In Delaware, as we have seen, the original *Act of* 1726-1736, by *Section* 21 created the courts of equity, observing the rules and practice of the "High Court of Chancery in Great Britain," but by *Sec.* 25 provided that the court of equity should have no power to determine any matter wherein sufficient remedy at law could be had before any other court.

So it was under the Federal system. By *Art.* 3, *Sec.* 2 of the Federal Constitution, judicial power of the United States is extended to equity. The first judiciary *Act of Sept.* 24, 1789, 1 *Stat.* 78, passed at the first session of Congress, by *Sec.* 11 gave to the Circuit Courts of the United States jurisdiction in equity. By *Sec.* 16 of the same *Act of* Sept. 24, 1789, it was provided:

"That suits in equity shall not be sustained in either of the courts of the United States, in any case where plain, adequate and complete remedy may be had at law."

Except for the later substitution of the words "in any court" for the words "in either of the courts" the provision has always remained the same, and is found as *Sec.* 267 *of Judiciary Code,* being *Section* 384, *U.S.C.A., Title* 28.

All of the cases agree that the statute is declaratory of the pre-existing rule of equity that the adequacy of the remedy at law is the test of equitable jurisdiction, and that a suit in equity cannot be maintained where there is a plain, adequate and complete remedy at law.

Because, however, the statute is declaratory of a pre-existing rule of equity, it does not follow that the statute is without purpose or effect. In *New York etc. Co. v. Memphis Water Co.,* 107 *U.S.* 205, 214, 2 *S. Ct.* 279, 286, 27 *L. Ed.* 484, it is said:

"This enactment certainly means something, and, if only declaratory of what was always the law, it must at least, have been intended to emphasize the rule, and to impress it upon the attention of the courts."

In *Matthews v. Rodgers*, 284 *U.S.* 521, 52 *S. Ct.* 217, 219, 76 *L. Ed.* 447, it was said by Justice Stone (now Chief Justice) that

"The effect of this section, which was but declaratory of the rule in equity, established long before its adoption, is to emphasize the rule and to forbid in terms recourse to the extraordinary remedies of equity where the right asserted may be fully protected at law."

In *Baker v. Biddle*, 2 *Fed. Cas.*, page 439, No. 764, Baldwin, J. shows that in the formative period of the jurisdictions of law and equity both courts, judging of their own jurisdictions, assumed certain elements from the other: how the courts of equity professing to act only in aid of the law curing its own defects adopted a general rule not to interfere where the remedy at law was complete, but did not always adhere to that rule. Justice Baldwin shows that repeated efforts were made by the Commons of England to define and limit this jurisdiction "to such cases as have no remedy by the common law," but were defeated in such efforts by the Crown. It is then asserted that

"To avoid the confusion arising from this conflicting struggle for jurisdiction, between the different courts of common law and equity, congress vested the powers of both courts in the circuit courts, and did what the commons of England could not effect, prohibited their exercise of equitable powers, where the legal remedy was complete."

The court said that the statute

"* * * by super-adding the authority of the legislature to that of the common law * * * [did not] leave the line of separation discretionary with the judges. To give any other effect to a declaratory law than settling a rule and standard for all cases coming within it, would annul it, for if it leaves the common law as it was before, doubtful or discretionary in any way with the court, it is to all intents and purposes a dead letter."

Chancellor Saulsbury in *Fox v. Wharton*, 1878, 5 *Del.*

*Ch.* 200, 214, said of the limitation set out in *Sec.* 25 of the *Act of* 1726-1736:

"Now this supposed limitation amounts substantially to no limitation at all, for the reason that, where there is a complete remedy at law, courts of equity do not assume to exercise jurisdiction. This is a fundamental principle of equity jurisprudence, and it is this principle which is incorporated in § 25 [as above set out]. A cause in which there is a complete remedy at law is not a matter and cause of equity at all. This section cited, therefore, is nothing but a legislative declaration of what would have existed without it. * * *"

The case before him was the foreclosure of a mortgage in equity where the mortgage was payable in installments, and only one installment had fallen due. It was found that there was no adequate, complete or "sufficient" remedy at law, and this clearly gave the courts of equity jurisdiction, and made the remarks concerning the statute unnecessary. That the statement in *Fox v. Wharton* was *dictum* was the view of the late Chancellor Wolcott, who, in *Hollis, Adm'r., v. Kinney*, 13 *Del. Ch.* 366, 368, 120 *A.* 356, 358, said

"In *Fox v. Wharton* it was remarked that the legal remedy there under discussion, viz., foreclosure of a mortgage at law, was not adequate or complete. That being so, it may be said that the general language of the Chancellor, to the effect that the ancient jurisdiction could not be destroyed by such statutory language as appears in our statute, was dictum. The dictum, however, appears to have been uttered after careful and deliberate study of the question."

If the language of *Fox v. Wharton* that a "cause in which there is a complete remedy at law is not a matter and cause of equity at all" was intended to state an invariable rule of equity and this rule cover precisely the same field as the statute, then little can be said. The statute, however, cannot be so summarily dismissed, if the rule that jurisdiction will not be taken in equity if there be an adequate remedy at law is not an invariable rule at all, but a rule to be adopted or discarded at will. In the present case it is not suggested that the remedy at law is not full, complete and adequate, or, as expressed by the statute, "suffi-

cient." Notwithstanding the adequacy of the remedy at law, jurisdiction was taken in the present case, and this jurisdiction is not sought to be sustained by reason of the inadequacy of the remedy at law, but upon the theory that English Courts of Chancery had jurisdiction over settlement of estates, and that this jurisdiction inheres in the Court of Chancery in Delaware, notwithstanding the fact that an adequate or sufficient remedy at law exists. Upon this reasoning the statute never had any effect as a statute, and does not express any settled rule of equity, and consequently is without validity or force. Before the statute can be thus entirely discarded attention must be directed to the Delaware cases discussing it.

The general language of *Fox v. Wharton* seems to have been adopted in *Walker v. Caldwell*, 8 Del. Ch. 91, 67 A. 1085, 1086, although the facts of that case would seem to bring it clearly within the jurisdiction of equity because of the inadequacy of the legal remedy. In the cited case, Daniel Caldwell left to his two sisters and their children the interest and principal "of my money that is in the banks in Boston, Mass." The testator had money in his own name in three banks in Boston, and in another bank he had money in the name of "Daniel Caldwell, trustee for Richard Caldwell." The money deposited in his individual name was duly paid over, and the case only involved the deposit in the name of "Daniel Caldwell, trustee for Richard Caldwell." It is quite apparent that no adequate remedy at law could exist as to this deposit, and there seems to have been no occasion to consider any question other than the inadequacy of the remedy at law.

The general language of *Fox v. Wharton*, that the Delaware statute is declaratory of a settled rule of equity, is again expressed in *Kahn v. Orenstein*, 12 Del. Ch. 344, 114 A. 165, 167, where again it is stated that equity will not entertain jurisdiction where there is an adequate remedy at law. In the last cited case, Chancellor Curtis said:

"Statutes such as that which since 1792 [sic] have existed in Delaware denying to the Chancellor power to determine any matter wherein sufficient remedy may be had at law is declaratory of a limitation established from ancient times irrespective of statutes."

*Kahn v. Orenstein* is cited in *Bovay v. H. M. Byllesby & Co.,* 26 *Del. Ch.* 69, 22 *A.* 2d 138, and the latter case in turn by *First National Bank v. Andrews,* 26 *Del. Ch.* 344, 28 *A.* 2d 676.

No objection can be made to the statements in any of the cited cases, that the Delaware Act is declaratory of a preexisting rule of equity that jurisdiction will not be taken in equity if there be a plain, adequate and complete remedy at law. The act seemingly was declaratory of such rule. Exception can only be made if and when the rule in equity itself is denied or not enforced, and the statute entirely disregarded. In none of the cited cases is there any express statement that the statute is without force or effect, and it is only by implication that such thoughts can be drawn therefrom.

On the other hand, there is a long line of Delaware cases in which the courts have indicated that the Delaware statute is a distinct limitation on the jurisdiction of the Court of Chancery, and that the jurisdiction in equity is based, in Delaware, solely upon the inadequacy of the remedy at law. Pomeroy lists Delaware among the States holding the statute as a limitation of jurisdiction. 1 *Pomeroy Eq.Jur.,* (*5th Ed.*), *page* 763.

In 1831, in *Beeson v. Elliott,* 1 *Del. Ch.* 368, 386, Johns, Sr., Chancellor, stated that the Delaware Act

"* * * limiting the powers of the courts of equity within this State, the jurisdiction of the present case (there being a sufficient remedy at law) is ousted."

In 1847, in *Jefferson v. Tunnell,* 2 *Del. Ch.* 135, and in the case on appeal in 5 *Har.* 206, Johns, Sr., Chancellor, said that inasmuch as the Delaware statute denied jurisdiction in equity where jurisdiction at law is given

"* * * according to the tenor and directions of the laws of this Government"

and inasmuch as the remedy at law was given by a statute,

"* * * therefore [it follows as] a necessary consequence that the Court of Chancery in this State has no power or authority to hear, decree or determine in equity any such matter."

In *Equitable G. & T. Co. v. Donohoe*, 8 *Del. Ch.* 422, 431, 45 *A.* 583, 585, Chancellor Nicholson, after citing the Delaware Act, says:

"Thus, while all of the powers of the English court of chancery were vested in our court of chancery by the constitution and laws of this state, the most effective barrier against possible encroachment, either upon other tribunals or the rights of individuals, was not left to be drawn from English precedents or general principles, but was explicitly expressed as words of limitation or prohibition in the very statute which conferred the general powers."

The *Donohoe* case was again approved in *Mayor, etc. of Wilmington v. Addicks, (Del. Ch.)*, 47 *A.* 366, 371, where the Chancellor stated that if a plain and adequate remedy existed at law

"It is not within the power of this court [Chancery] to determine them."

In 1916, in *G. W. Baker Machine Co. v. United States Fire Apparatus Co.*, 11 *Del. Ch.* 386, 97 *A.* 613, the Supreme Court held that the restrictive terms of the Delaware Act denied to the Chancellor jurisdiction in specific performance based upon mutuality of remedy, and held that equitable relief was not based upon mutuality but upon inadequacy of legal remedy.

In *Field v. Layton*, 16 *Del. Ch.* 135, 141 *A.* 818, Chancellor Wolcott evidently considered the statute as a limitation on the jurisdiction in equity, and in *Sharpless-Hendler Co. v Davis*, 16 *Del. Ch.* 315, 147 *A.* 305, he speaks of the statute as "defining the jurisdiction of the Court of Chancery."

At first glance there it may seem to be of little conse-

quence whether the adequacy of a remedy at law defeats the jurisdiction of the court of equity in a given case, because, on the one hand, of an inflexible rule of the Court of Chancery that in such cases it will not assume jurisdiction, or, on the other whether such equitable jurisdiction is denied by the express terms of a statute giving such jurisdiction to a court of law. The matter has importance, however, because of some authorities which hold that the inflexible maxim that equitable jurisdiction depends upon the inadequacy of the remedy at law only applies to that original condition of law and equity at a period when equity was establishing its jurisdiction, and not to a so-called concurrent jurisdiction in equity after an adequate remedy at law has been secured.

There are, at least, two important ways by which a jurisdiction in equity may be considered as limited by the creation of an adequate remedy at law, viz.: (a) By the decisions of a court of law assuming to itself such jurisdiction, and (b) by a constitutional provision or the terms of a constitutional statute expressly granting such jurisdiction to a court of law.

(a) We are not concerned with the first division because it does not come within the limiting terms of the Delaware statute. The pertinent phrase of the Delaware statute is

"The Chancellor shall not have power to determine any matter wherein sufficient remedy may be had by * * * statute, before any other Court, or jurisdiction, of this State."

This division is, at times, confused with other methods, and has given rise to the oft quoted words of Lord Eldon which were quoted in *Fox v. Wharton,* and which are often used with no proper regard for the circumstances of their origin:

" 'This court [Chancery] will not allow itself to be ousted of any part of its original jurisdiction because a court of law happens to fall in love with the same or a similar jurisdiction'."

Of course we are not to be understood as saying that the assumption by a court of law of some equitable jurisdiction or remedy deprives a court of equity of a pre-existing jurisdiction.

(b)   Whether the adequacy of a remedy at law created by a subsequent constitutional statute may defeat the pre-existing jurisdiction in equity, or whether there still remains, in equity, a remedy untouched by the principle of adequate remedy at law, may be an important question dependent upon many factors.   In many jurisdictions holding such remedy still exists, the cases hold that such jurisdiction will not be exercised unless there exists also some peculiarly applicable equitable principle making such jurisdiction desirable.   In Delaware the Supreme Court *In re Reeves,* 10 *Del. Ch.* 483, 94 *A.* 511, 512, said:

"* * *   it may be said that the general jurisdiction and powers of the Court of Chancery are vested by *Section* 10, *Article IV* of the Constitution, (1897), and *Section* 1, *Chapter* 95, *Code* (1893) [now *Sec.* 4367, *Revised Code* 1935.]   *Except in so far as affected by subsequent statutory provisions,* the Court of Chancery is by the above statute vested with the jurisdiction and powers according to the course of chancery practice in England." [Emphasis supplied.]

Let us for a moment consider the general divisions of equitable jurisdiction.   Most authorities give to these divisions the names of "exclusive" and "concurrent" jurisdiction.   *Langdell,* however, points out in his *Brief Survey of Equity Jurisdiction, p.* 22, that the very term "jurisdiction" as applied to equity, has a different meaning from that as applied to courts of law "and the failure to recognize that fact has caused much confusion of ideas."   Where two independent courts of law are created by the same sovereign power, the subjects of their jurisdiction may be exclusive as to either, or concurrent one with the other. But, says Langdell, the terms "concurrent" or "exclusive" have no proper application to equity, or rather that they incorrectly describe the relation between equity and other systems of law.

(1) The exclusive jurisdiction, says Pomeroy, exists where either the primary right sought to be adjudicated is of purely equitable and not legal origin, or the remedies to secure that right are purely equitable.

(2) The concurrent jurisdiction is where the primary right sought to be adjudicated is legal in nature, but the legal remedies are not full, adequate and complete.

As to whether the inadequacy of the remedy at law is the fundamental basis of all jurisdiction in equity is the subject of some slight dispute. The great weight of authority holds in general terms that where the legal remedies are full, adequate and complete, a suit in equity may not be maintained. 19 *Am. Jur., page* 109. Pomeroy contends (*Sec.* 137) that where the exclusive jurisdiction of equity arises from the fact that the primary right is of purely equitable nature that the jurisdiction exists by nature of the right, and not of the remedy, and that in such case it is improper to assign inadequacy of legal remedy as a basis of jurisdiction.

This view may well be correct because equity alone exercises jurisdiction over equitable rights, and, in such cases, there is no legal jurisdiction, the adequacy of which is to be considered or tested. Pomeroy concedes (*Sec.* 220) that where equitable remedies are sought for the enforcement of rights which are legal and not equitable in nature, that then the adequacy of the legal remedy is the jurisdictional element or test. This latter jurisdiction is that which is usually termed the "concurrent" jurisdiction, and the failure to give to the word its proper meaning, or to use the word "concurrent" in its proper sense, may be the basis of much misunderstanding. The term concurrent jurisdiction as applicable to equity and law does not mean that the jurisdiction is an alternative and equal jurisdiction really concurrent with the courts of both law and equity, and available in either at discretion. In such case the rule, heretofore designated as an invariable rule of equity, would have no

force. The term does mean that jurisdiction over legal rights ordinarily cognizable in a court of law may be entertained in a court of equity, concurrently with the law court, where the remedy of the law court is, for some reason, imperfect or inadequate. So it is that Pomeroy (*Sec.* 139) says:

"The fact that the legal remedy is not full, adequate and complete is, therefore, the real foundation of this concurrent branch of the equity jurisdiction."

Again in *Sec.* 217 Pomeroy says that the insufficiency and inadequacy of the legal remedies to meet the requirements of justice under any given set of circumstances where the primary rights, interests or estates are wholly legal in nature constitutes the concurrent jurisdiction of equity to interfere under those circumstances, they are the essential facts upon which the existence of that jurisdiction depends. The inadequacy of the legal remedy, says Pomeroy,

"* * * is the essential element of the concurrent jurisdiction: its very existence depends upon the inadequacy of the legal remedies given to the litigant parties under the same circumstances upon which the equity tribunal bases its jurisdiction."

What is meant by the inadequacy of legal remedy? Most of the authorities hold that to defeat the jurisdiction of equity the legal remedy must be full, adequate and complete. The Delaware statute uses the term "sufficient remedy." At this time we are not prepared to say there is any distinction between the terms, and for the purposes of this case consider the term "sufficient remedy" as meaning one full, adequate and complete. See *Beeson v. Elliott*, 1 *Del. Ch.* 368, 386; *Harden v. Eastern States Pub. Serv. Co.*, 14 *Del. Ch.* 156, 161, 122 *A.* 705.

But it is said that if equity has ever had jurisdiction even concurrent in nature and dependent upon inadequacy of legal remedy for its existence, and the legal remedy is later made adequate, this concurrent remedy is not lost or affected. *Pomeroy, Secs.* 182, 276.

The determination of this question depends upon the

manner by which the legal remedy is subsequently made adequate. If the adequacy of the legal remedy is furnished by the mere fact of the adoption by a law court of equitable remedies, then, for the purposes of this case, we may assume that the equitable jurisdiction theretofore existing has not been impaired, but we are not concerned with such a case.

As we have indicated, one of the two ways by which a jurisdiction in equity may be limited by the creation of an adequate remedy at law is by a constitutional statute expressly granting such jurisdiction to a court of law. Many authorities view the language of the statute as the controlling element as to whether or not the jurisdiction in equity is at end. Many authorities hold that where the statute merely by affirmative words gives a legal remedy that then the equitable remedy is not denied, but to have this effect the statute must use words negativing or expressly taking away the equitable jurisdiction.

We have in this case the example of a statute giving to the Orphans' Court a full and adequate remedy at law in matters concerning a distributive share of an estate such as is here involved. This statute may be considered as superimposed upon a statute (*Sec.* 4367), stating that the Chancellor shall not have power to determine any matter wherein sufficient remedy is given by statute to another court. The two statutes read together have the same effect as if the statute giving jurisdiction to the Orphans' Court had also, within itself, expressly negatived the jurisdiction of the Court of Chancery where the legal remedy was adequate. This is so because one statute expressly gives an adequate and complete remedy at law, and the other statute, in express terms, provides that when this adequate remedy at law exists, that in such cases the jurisdiction in equity does not exist.

*Section* 4367 *of Revised Code,* 1935, is we think, a limitation on the power of the Chancellor, because the Act expressly states:

"* * * the Chancellor shall not have power to determine any matter wherein sufficient remedy may be had by * * * statute, before any other Court, or jurisdiction, of this State, * * *"

and the limitation is carried into the constitutional jurisdiction. Being a limitation on the power of the court, it is a continuing denial of jurisdiction where the remedy at law is sufficient.

The statute denying jurisdiction in equity where there is a sufficient remedy at law was enacted between the years 1726—36, and as a part of that same statute which created any equitable jurisdiction whatever. The statute remains today unchanged. It means today, as to jurisdiction, precisely what it meant when originally enacted. It is almost impossible to imagine language to be used by the framers of the Act which would more precisely or definitely serve to limit the jurisdiction of the Court of Chancery than the language used by the Act. Faced with the example of history and of courts contending with each other as to jurisdiction, each assuming what it could gather, the framers of the law, I think, intended to restrain this then comparatively little used court of equity, adjudicating without a jury, from assuming jurisdiction cognizable before a court of law, where a trial by jury was the rule. To say that the statute meant nothing at all when it was passed, or that it had no application if an English court had ever previously assumed jurisdiction in a certain class of cases is, to me, an incorrect construction. It was a part of the statute creating the courts of law and equity, and spoke from that time forward as a limitation on jurisdiction, and so remains today, and is so classified by Pomeroy. 1 *Pomeroy, (5th Ed.), Sec.* 344.

Because the statute declared what was supposed to be an invariable rule of equity, so it is spoken of as "declaratory" of the rule. The statute, however, adopted and raised a mere rule of equity into a part of the supreme law of the land, and, as formerly said by the present Chief Justice

Stone, the purpose of the Act was "to emphasize the rule and to forbid in terms recourse" to equity where the remedy at law was full, complete and adequate.

But it may well be argued that the Court of Chancery is a constitutional court, and its jurisdiction cannot be defeated or lessened by an Act of Assembly. The answer, we think, is clearly read in the history of the constitutional and statutory provisions, and the jurisdiction of the court hereinbefore set out at large. The Court of Chancery is a constitutional court invested with all the equitable powers and jurisdiction vested in equitable courts in England, at least when our court was formed, subject only to the limitation that the jurisdiction does not exist when there is a sufficient remedy at law. This limitation was exactly contemporaneous with the creation of the court, and the wide and extensive jurisdiction of the equity courts, together with the limitation, is the jurisdiction that became constitutional, and has since so continued.

All that has been heretofore said applies with particular force to the jurisdiction in equity over administration of intestate estates. Here there is no question concerning the construction of a will or any feature of peculiarly equitable jurisdiction such as was involved in *Patten v. Jones,* 3 *Del. Cas., Boorstin,* 11.

Most modern cases hold that the administration of intestate estates are now determined in probate courts, Orphans' Courts and similar tribunals, and that any supposedly original jurisdiction in equity, if ever existent, is now either expressly or practically abrogated and obsolete when not accompanied with some special circumstances or equitable feature, or when not called into play by inadequacy or legal remedy. 1 *Pomeroy,* (*5th Ed.*) *Sec.* 346, &c.

The majority opinion goes further than any modern case.

I am authorized to say that Judge Speakman concurs in this dissent.